## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **DARVETTE SMITH, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 11 C 1773** |
| | ) | |
| **FAMILY VIDEO MOVIE CLUB, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiffs' motion for conditional

certification of collective action under the Fair Labor Standards Act (FLSA), 29

U.S.C. § 201 *et seq.* For the reasons stated below, the motion is granted.

## BACKGROUND

Defendant Family Video Movie Club, Inc. (FVMC) allegedly owns and

operates over 700 movie and video game rental stores in 19 different states.

Plaintiffs were allegedly employed by FVMC stores in Iowa, Illinois, and Michigan.

Plaintiffs were allegedly paid at an hourly rate and were allegedly required to

perform work while not on the clock, such as assisting customers, opening stores,

1

cleaning and maintaining stores, making phone calls, working on inventory, stocking shelves, closing down stores, and making bank deposits. Plaintiffs brought the instant action and include in their amended complaint Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, claims (Count I), Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.*, claims (Count II), and Michigan Minimum Wage Law (MMWL), Mich. Comp. Laws §408.384, overtime claims and minimum wage claims (Count III). FVMC moved to dismiss the overtime claims in Count III and to strike the class allegations in Counts II and III. On August 4, 2011, the court granted the motion to dismiss the MMWL overtime claims (Count III), and denied the motion to strike class allegations in Counts II and III. Plaintiffs now move for conditional certification of collective action under the FLSA.


## DISCUSSION

The FLSA specifies that employees have "the right to bring their FLSA claims through a 'collective action' on behalf of themselves and other 'similarly situated' employees." *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010)(quoting in part 29 U.S.C. § 216(b)). A collective action brought under the FLSA "is similar to, but distinct from, the typical class action brought pursuant to" Federal Rule of Civil Procedure 23 (Rule 23). *Id.* The main difference between a FLSA collective

action and a Rule 23 class action "is that plaintiffs who wish to be included in a

collective action must affirmatively opt-in to the suit by filing a written consent with

the court, while the typical class action includes all potential plaintiffs that meet the

class definition and do not opt-out." *Id.*

The FLSA does not specify the process by which a court should determine

whether plaintiffs can pursue FLSA claims as a collective action, and district courts

have discretion in determining the appropriate process. *See Hoffmann-La Roche Inc.*

*v. Sperling*, 493 U.S. 165, 169-70 (1989)(holding that "district courts have

discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating

notice to potential plaintiffs"); *Alvarez*, 605 F.3d at 449 (stating that "[a] district

court has wide discretion to manage collective actions"). As to the process for

determining whether an FLSA lawsuit should proceed as a collective action, the

majority of district courts in this district have followed a two-step process. *Jirak v.*

*Abbott Laboratories, Inc.*, 566 F. Supp.2d 845, 847-48 (N.D. Ill. 2008). The court

also notes that the Seventh Circuit has recognized that district courts employ the two-

step process and has not indicated that the process was improper. *See, e.g., Ervin v.*

*OS Restaurant Services, Inc.*, 632 F.3d 971, 974 (7th Cir. 2011)(explaining that

"[t]he conditional approval process is a mechanism used by district courts to

establish whether potential plaintiffs in the FLSA collective action should be sent a

notice of their eligibility to participate and given the opportunity to opt in to the collective action").

At the initial step of the certification process, the plaintiffs are required "only . . . to make a minimal showing that others in the potential class are similarly situated." *Jirak*, 566 F. Supp.2d at 847. If the plaintiff meets that "minimal showing, the class is conditionally certified and notice is sent to potential class members, giving them an opportunity to opt in." *Id.*; *see also Wynn v. Express, LLC*, 2012 WL 386716, at *1 (N.D. Ill. 2012)(stating that at the initial step, "the plaintiffs must make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law'")(quoting *Flores v. Lifeway Foods, Inc.,* 289 F.Supp.2d 1042, 1045 (N.D. Ill. 2003)); *Perez v. Comcast*, 2011 WL 5979769, at *1 (N.D. Ill. 2011)(stating that "[f]irst, the court considers whether to conditionally certify a class" and that "[t]o obtain this relief, a plaintiff must make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law")(internal quotations omitted)(quoting *Hundt v. DirectSat USA, LLC,* 2010 WL 2079585, at *2 (N.D. Ill. 2010)).

At the second step of the process, "which occurs after the parties have engaged in discovery and the opt-in process is completed, the court's inquiry is more

stringent" and "the Court must reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Jirak*, 566 F. Supp.2d at 847. At the second step, the court must also determine: "(1) whether the plaintiffs share similar or disparate employment settings; (2) whether affirmative defenses raised by the defendant would have to be individually applied to each plaintiff; and (3) any fairness and procedural concerns." *Id.* The court notes that it has entered the parties' agreed proposed protective order in this case due to the confidential nature of certain information involved in this case. As such, the court will make only general references to certain portions of the record in order to maintain the confidentiality.

I. Similarly-Situated Individuals

Plaintiffs contend that they have met their minimal burden to show that others in the potential class are similarly situated. Plaintiffs have pointed to evidence indicating that FVMC had a policy of requiring employees to perform certain work, such as taking bank deposits to the bank, after clocking out. *See, e.g.,* (Smith Decl. Par. 4); (Kurtz Decl. Par. 5); (Hodorovych Decl. Par. 4); (Box. Decl. Par. 4). Plaintiffs have also pointed to evidence indicating a practice by FVMC to request that employees run errands, such as buying store supplies, while off-the-clock and

without pay.  *See, e.g.,* (Smith Decl. Par. 5); (Brezinsky Decl. Par. 5); (Kutrz Decl.

Par. 5).  Plaintiffs have also pointed to evidence obtained during discovery showing

that FVMC has other policies and practices that result in employees being required to

perform work off-the clock and without pay.

FVMC argues that Plaintiffs have failed to identify a common policy or

practice that violates the FLSA.  However, contrary to FVMC's assertion, Plaintiffs

have identified several common policies and practices and have based their

assertions on information obtained in discovery.  Plaintiffs contend, for example, that

there is evidence that management at FVMC frequently required pre and post-shift

cleaning work to be done off-the-clock and required employees to run errands for the

stores off-the-clock.  FVMC argues that the record shows that the official policy for

FVMC was that employees were required to clock-in for all work performed.

However, regardless of what FVMC's official written policy is, it remains to be

determined in this action whether FVMC had a de facto policy that required

employees to perform work off-the-clock and without pay.  The mere fact that

FVMC's written policy indicates that FVMC will not violate the FLSA does not

insulate FVMC from a FLSA action.  *See Blakes v. Illinois Bell Telephone Co.*, 2011

WL 2446598, at *5 (N.D. Ill. 2011)(stating that "an unwritten de facto policy that

discourages employees from seeking compensation for work performed outside their

shift and that forces them to perform uncompensated work off-the-clock" violates the FLSA, and that "[c]ourts in this district "regularly allow" plaintiffs to pursue collective actions under the FLSA in these circumstances . . . because regardless of what a company's official policy says, some evidence that a separate policy is enforced by more than a rogue manager or two supports a conclusion that similarly situated employees were subject to a common practice violating the FLSA"). There is no requirement that a FLSA claim be based on a written official policy, and FVMC cites no controlling precedent for that proposition.

FVMC also contends that certain employees have indicated that FVMC's official written policy was rigorously enforced, but that does not negate the evidence pointed to by Plaintiffs, at this stage of the litigation, indicating that the experience was not the same for other employees. FVMC, in fact, contends that employees are disciplined if they perform work off-the-clock. FVMC also points to evidence by management and employees indicating that no employee was ever instructed to work off-the-clock. However, that is contrary to the evidence obtained from various employees and pointed to by Plaintiffs that indicates that instead of being disciplined for working off-the-clock, the employees were actually told to work or forced to work off-the-clock by multiple management officials. For example, Plaintiff Blake Brezinsky (Brezinsky) claims that he complained five or six times to different store

managers about not being paid for making bank deposits, but was essentially told each time "That's just kind of the way it is. There's really nothing we can do about it." (Brezinsky Dep. 46). Plaintiff Erin Box (Box) claims, for example, that the policy of requiring employees to do work off-the-clock was enforced not only by store managers, but also by her district manager and regional manager. (Box. Dep. 250-251). In addition, although FVMC argues that its official policy would not allow employees to do tasks off-the-clock such as taking deposits to the bank, Plaintiffs have pointed to evidence showing that FVMC did not actually change the policy to its current form until it had been sued in the instant action. (Reply 6).

As Plaintiffs correctly point out, the mere fact that there may be some employees who did not work off-the-clock and who therefore will not opt-in as a member of the class does not relieve FVMC of its obligation to defend itself in a collective action formed by the employees who contend that they were required to do work off-the-clock. Also, Plaintiffs have pointed to evidence that supports their position that regardless of the written policy in existence for working off-the-clock, overtime hours were highly discouraged and Plaintiffs were not provided with sufficient time to do certain required tasks, thus effectively forcing them to work off-the-clock. Box contends, for example, that she was reprimanded by her store manager for exceeding payroll budget by 15 minutes and going into overtime, even

though that overtime was spent performing necessary tasks for FVMC.  (Box. Dep. 187-90).  Brezinsky claims, for example, that although he did not tell employees to "punch out and continue work," whatever they had to do to complete that task, without getting in trouble, they would have done" and that he and the employees he supervised needed to do work off-the clock in order to complete required tasks. (Brezinsky Dep. 287-88).

FVMC also argues that its official policy provides that employees are responsible for signing their timesheets to attest to their accuracy.  FVMC argues that Plaintiffs cannot now complain that their timesheets were not accurate.  However, it is FVMC, as the employer, that has the burden to comply with the requirements of FLSA.  FVMC cannot pass that obligation onto its employees, and as explained above, the written policy would be immaterial if it was not the de facto policy. Plaintiffs have pointed to evidence indicating that although employees knew that their timesheets did not reflect all their work, they would not receive their paychecks if they did not sign the time sheets.  (Brezinsky Dep. 192-95).

FVMC also argues that Plaintiffs' deposition testimony is not credible, and FVMC disputes whether the policies identified by Plaintiffs actually existed, and the extent that such policies proliferated in FVMC stores.  FVMC also contends that there is evidence that some employees were paid for all the work they performed.

FVMC also argues that the analysis of claims and defenses will involve a highly individualized inquiry for each Plaintiff. However, such arguments are premature at this juncture when Plaintiffs merely seek a conditional certification at the first step of the collective action process. As indicated above, at the second step, a defendant can raise concerns regarding a lack of common facts among potential class members and the need for individualized inquiries. *Perez*, 2011 WL 5979769, at *1. In addition, the merits of Plaintiffs' claims can be considered in part at the summary judgment stage. FVMC argues that certain policies alleged by Plaintiffs, such as FVMC's policy concerning commissions, do not violate the FLSA, or that at least FVMC had followed in good faith U.S. Department of Labor findings in establishing FVMC policies. However, FVMC itself acknowledges that it eventually intends to file a summary judgment motion to argue that its treatment of commissions does not violate FLSA. (Ans. 34 n.41). It is premature at this juncture to address the merits of Plaintiffs' claims and FVMC's defenses.

FVMC attempts to impose evidentiary burdens upon Plaintiffs that do not exist at this juncture. As indicated above, Plaintiffs are merely required to make a minimal showing at this initial stage. FVMC contends that Plaintiffs are seeking to "certify a collective action," but FVMC fails to acknowledge that by the instant motion, Plaintiffs are merely seeking to conditionally certify the collective action and

send out the opt-in notices. (Ans. 1). FVMC also attempts to impose in this action the same standards for a Rule 23 motion for class certification, (Ans. 12, 18), but FLSA collective actions, although similar, are not entirely the same under the law. *See, e.g., Alvarez*, 605 F.3d at 448; *Wynn*, 2012 WL 386716, at *1 (stating at step one of the conditional certification "[t]he required showing is less stringent than that required to certify a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure"); *Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 316 n.8 (N.D. Ill. 2010)(stating that "[t]he FLSA has a lower threshold for conditional certification than Rule 23"); *Oropeza v. Appleillinois, LLC*, 2010 WL 3034247, at *4 (N.D. Ill. 2010)(stating that "'representative' discovery in a FLSA claim is not the same as 'representative' discovery in a Rule 23 class action"); *Jirak*, 566 F. Supp.2d at 848 (stating that the similarly-situated determination at the conditional certification stage is "made using a lenient interpretation of the term 'similarly situated'"). The court also notes that some district courts have required plaintiffs to meet an "intermediate standard," if plaintiffs have been allowed to conduct significant discovery. *Wynn*, 2012 WL 386716, at *2 (stating that a "more stringent review may be applied on a motion for conditional certification where substantial discovery already has taken place")(internal quotations omitted)(quoting *DeMarco v. Nw. Mem'l Healthcare*, 2011 WL 3510905, at *2 (N.D. Ill. 2011)). Plaintiffs have been allowed certain

limited discovery in this case and have pointed to sufficient evidence from that discovery to show that a class should be conditionally certified, even under such an intermediate standard. Based on the record before the court, Plaintiffs have met their initial burden for conditional certification of collective action under the FLSA, and the motion for conditional certification of collective action is granted.

II.  Class Definition and Notice

FVMC also argues that the proposed class notice and class definition are improper. FVMC contends that the notice is unnecessary and a waste of judicial resources. FVMC contends that Plaintiffs' counsel has already been soliciting putative class members by sending them messages on Facebook.com. However, prior informal efforts by Plaintiffs' counsel to identify potential class members does not negate the need for an organized notice procedure in which potential class members are presented with necessary information in a clear and uniform fashion. It is particularly important that potential class members are informed of their rights, especially considering the allegations by Emily Smith, who claims that in April 2011 she had a conversation with Nicole Lisby (Lisby), the store manager for store 451, and that Lisby stated that FVMC "would know which employees joined the lawsuit and . . . that if we got involved in the lawsuit we would lose our jobs." (E Smith

Decl. Par. 6). Under such circumstances, there is an even greater need to ensure that potential class members are properly informed of their rights and their option to join in the potential collective action. FVMC also objects to certain language in the proposed notice and requests leave to address its objections if the court decides to conditionally certify a collective action and authorize notice. (Ans. 36). Plaintiffs indicate in response a willingness to make certain adjustments to the proposed notice. (Reply 27). The parties are directed to meet and confer and attempt to formulate an agreed proposed notice and to submit the proposed notice to the court by March 15, 2012. The agreed notice should make clear to potential class members that there has not yet been a final class certification in this matter and that at step two of the collective action certification process, Plaintiffs may or may not meet their burden to show that a final certification is warranted in this action. If the parties cannot agree to a proposed notice, Plaintiffs are directed to file their proposed notice by March 15, 2012, and FVMC is given until March 22, 2012 to file a memorandum explaining its objections to the proposed notice.

## CONCLUSION

Based on the foregoing analysis, Plaintiffs' motion for conditional certification of collective action is granted.

_____

Samuel Der-Yeghiayan
United States District Court Judge

Dated:   February 22, 2012