**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DARVETTE SMITH, NATALIE** | ) | |
| **HODOROVYCH, ERIN BOX, and** | ) | |
| **BLAKE BREZINSKY, individually, and** | ) | |
| on behalf of all others similarly situated, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 11 CV 1773** |
| | ) | |
| **FAMILY VIDEO MOVIE CLUB, INC.,** | ) | **Judge John Z. Lee** |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Natalie Hodorovych and Erin Box, former employees at Family Video Movie

Club, Inc., ("Family Video"), have sued Family Video alleging that it violated the Illinois

Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, by failing to pay its hourly employees

for all of the time they were required to work.[1]  Plaintiffs move to certify a class pursuant to

Federal Rule of Civil Procedure 23.  For the following reasons, the Court denies Plaintiffs'

motion.

**Background**

Family Video is a chain of over 765 DVD and video game rental stores in 19 states with

more than 7,000 current employees.  (Pls.' Mem. Class Cert. 1-2.)  Since March 2008, Family

Video has employed 4,654 hourly employees across 115 stores throughout Illinois.  (Def.'s Resp.

---

[1] Because Plaintiff Darvette Smith was employed by Family Video in Iowa and Plaintiff Blake Brezinsky was employed by Family Video in Michigan, neither of them is part of the putative IMWL class.  (First Am. Compl. ¶ 14, 17.)

Ex. 1, Decl. Jamie Robinson ¶ 5.)[2]  Each store is managed by separate supervisory personnel, which, depending upon the store, could include any combination of an Assistant Manager, Manger in Training, and Store Manager.  (Def.'s Resp. 1.)

Hordorovych and Box worked together at Family Video's stores in Bloomington, Illinois. (First Am. Compl. ¶ 15-16.)  From November 2007 until April 2010, Hordorovych was a Customer Service Representative ("CSR") who assisted customers, processed video rentals and returns, conducted merchandising and inventory, cleaned and maintained the store, worked the cash registers, and took deposits to the bank.  (Pls.' Mem. Class Cert. 2; Dkt. 75, Hordorovych Decl. ¶¶ 2-3.)

From March 2008 until Spring 2010, Box was also a CSR.  (Dkt. 76, Box Decl. ¶ 2.)  In Spring 2010, Box was promoted to an Assistant Manager and remained in that position until November 2010.  (*Id.*; Def.'s Resp., Ex. 5, Deposition of Erin Box ("Box Dep.") 14-15.)  As an Assistant Manager, Box created schedules, set subordinate employees' work hours, and handled payroll issues.  (Box Dep. 292-94.)

Hordorovych alleges that Family Video required her to make bank deposits after clocking-out and to perform off-the-clock work in the store, including assisting customers, preparing the store to open, cleaning and maintaining the store, making required phone calls, completing inventory-related tasks, stocking shelves, and counting and balancing the cash register. (Hordorovych Decl. ¶ 4.)  Box echoes these allegations and further alleges that Family Video

---

[2] Before certifying a class, a district court "should make whatever factual and legal inquiries are necessary under Rule 23," and "[i]f some of the determinations required by Rule 23 cannot be made without a look at the facts, then the judge must undertake that investigation." *Spano v. The Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011).  Here, some of the factual inquiries necessary under Rule 23, such as the number of hourly employees Family Video has employed in Illinois since March 2008, are not addressed in Plaintiffs' filings.  Therefore, to establish this fact for the purposes of this motion, the Court relies on the sworn declaration of Jamie Robinson, an employee in the human resources department of Family Video.  The declaration is attached to Defendant's Response Brief.

required her to run errands to purchase merchandise and store supplies from other Family Video locations without pay; work special assignments without paying for travel time; and, as an assistant manager, reconcile bank statements and create weekly employee schedules while off-the-clock. (Box Decl. ¶¶ 4-6.) Plaintiffs also allege that Family Video failed to keep accurate records of hours worked, prohibited overtime pay, and excluded employees' commissions when calculating their overtime rates of pay. Plaintiffs seek to assert their claims as a class on behalf of:

> All current and former Family Video employees paid on an hourly basis and eligible to earn overtime that have worked at Family Video's retail stores in the state of Illinois since May 3, 2008, through the present.

## Discussion

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011) (internal citations and quotations omitted). In order to justify a departure from that rule, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* (internal quotations omitted). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Id.*

To be certified under Rule 23(a), a proposed class must satisfy each of the rule's four requirements: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

If Rule 23(a) is satisfied, the proposed class must fall within one of the three categories in Rule 23(b), which the Seventh Circuit has described as: "(1) a mandatory class action (either

3

because of the risk of incompatible standards for the party opposing the class or because the risk that the class action adjudication would, as a practical matter, either dispose of the claims of non-parties or substantially impair their interests), (2) an action seeking final injunctive or declaratory relief, or (3) a case in which the common questions predominate and class treatment is superior." *Spano*, 633 F.3d at 583.

"Rule 23 does not set forth a mere pleading standard." *Dukes*, 131 S.Ct. at 2551. "On issues affecting class certification . . . a court may not simply assume the truth of the matters as asserted by the plaintiff." *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 811 (7th Cir. 2012). Rather, the named plaintiff bears the burden of showing that a proposed class satisfies each requirement of Rule 23 by a preponderance of the evidence. *Id.* "Failure to meet any one of the requirements of Rule 23 precludes certification of a class." *Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993). Moreover, certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Dukes*, 131 S.Ct. at 2551. Indeed, the Seventh Circuit has directed district courts to exercise "caution in class certification generally." *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 746 (7th Cir. 2008).

Finally, although "as a general principle, a court is not allowed to engage in analysis of the merits in order to determine whether a class action may be maintained [,] . . . the boundary between a class determination and the merits may not always be easily discernible." *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598-99 (7th Cir. 1993) (internal citations and quotations omitted). Consequently, "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.*; *see also Dukes*, 131 S.Ct. at 2551 (class certification analysis "[f]requently . . . will entail some overlap

4

with the merits of the plaintiff's underlying claim").  As the Seventh Circuit has held, "a district court must make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case."  *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010); *see Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 889-90 & n.6 (7th Cir. 2011).

Here, Plaintiffs contend that their proposed class satisfies all four Rule 23(a) requirements and the requirements of Rule 23(b)(3).  Defendant contends that the proposed class fails to satisfy Rule 23(a)'s commonality and adequacy requirements and Rule 23(b)'s predominance requirement.  The Court agrees that Plaintiffs have failed to satisfy Rule 23(a)'s commonality requirement for all but one of their claims.  The Court also concludes that Plaintiffs have failed to demonstrate predominance under Rule 23(b)(3).  The Court addresses these issues in turn.

## I.      Rule 23(a)(2): Commonality

To demonstrate commonality under Rule 23(a)(2), a plaintiff must show that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Dukes*, 131 S.Ct. at 2551 (emphasis in original).  Indeed, "[a]ny competently drafted class complaint literally raises common 'questions.'"  *Id.* (citations omitted).  "Reciting these questions is not sufficient to obtain class certification."  *Id.*  Rather, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury."  *Id.*  (citations omitted).  "This does not mean merely that they have all suffered a violation of the same

provision of law." *Id.* In order for the claims of all purported class members to be litigated at once, the claims must depend on a common contention that "is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Moreover, where plaintiffs allege violations of compensation requirements in wage and hour cases, plaintiffs must demonstrate that such violations were companywide and not simply the result of "supervisor-level practices." *Vang v. Kohler Co.*, 488 Fed. Appx. 146, 147 (7th Cir. 2012) (remanding certification of state law wage and hour class and instructing the district court to "take evidence to determine whether this suit concerns one firm-wide policy or a congeries of supervisor-level practices") (citing *Bolden v. Walsh Const. Co.*, 688 F.3d 893, 896-97 (7th Cir. 2012)). "Unless plaintiffs can establish a firm-wide policy, Rule 23(a)(2) prevents class certification." *Vang*, 488 Fed. Appx. at 147.

Here, Family Video's official company policy prohibits off-the-clock work.[3] Plaintiff Hodorovych alleges, however, that Family Video violated the IMWL by requiring her to (1) make bank deposits after clocking-out, and (2) perform off-the-clock work in the store. (Hordorovych Decl. ¶ 4.) Plaintiff Box makes similar allegations and further alleges that Family Video violated the IMWL by requiring her to (1) run errands to purchase merchandise and store

---

[3] Family Video's Employee Handbook states that "[a]ll employees are required to clock in and out and are responsible for ensuring their time sheets are accurate at the end of each pay period by printing and signing their time sheets." (Def.'s Resp., Ex. 3, Family Video Employee Handbook, 12 (§ 4.07.)) Family Video directs its employees that "[i]f you forgot to clock in or out, report the problem to your Manager on duty. Working off the clock is not permitted under any circumstances and is grounds for disciplinary action." (*Id.*) Family Video also requires its employees to review their timesheets and, if accurate sign a verification that: "I confirm that my timesheet is true, accurate and includes all hours worked at this location." (*Id.*; Ex. 7, Horodovych Timesheets; Ex. 8, Box Timesheets.) Family Video's internal payroll documents provide: "IMPORTANT: If an employee is working (even on their own time – time not scheduled), they MUST be clocked in --- no exceptions." (*Id.*, Ex. 4, Family Video Payroll Instructions.) (caps in original).

supplies from other Family Video locations without pay; (2) work special assignments without paying for travel time; and (3) as an assistant manager, reconcile bank statements and create weekly employee schedules, all while off-the-clock.  (Box Decl. ¶¶ 4-6.)

    To show that their individual claims are common to all Family Video hourly employees in all Family Video stores throughout Illinois for the entire five-year proposed class period, Plaintiffs rely on (1) alleged official and unofficial companywide Family Video policies that they contend led to companywide IMWL violations, and (2) declarations from seven proposed class members.[4]  To determine whether this evidence establishes, by a preponderance of the evidence, that Plaintiffs' individual claims are common to the class and capable of classwide resolution, the Court must conduct a "rigorous analysis" into each allegation.  *See*, *e.g.*, *Vang*, 488 Fed. Appx. at 147 (remanding certification of state law wage and hour class because the district court did not conduct sufficient analysis as to whether the claims involved a firm-wide policy or different supervisor-level practices); *Ealy v. Pinkerton Gov. Servs.*, No. 12-1252, 2013 WL 980035, at *5 (4th Cir. Mar. 14, 2013) (remanding certification of state law wage and hour class because "[g]iven the factual circumstances of their meal breaks, a common question of law could be whether or not the class members should have been compensated for that time under Maryland law.   But whether those common questions are dependent upon a "common contention," *Dukes*, 131 S.Ct. at 2551, the resolution of which will resolve "each one of the claims in one stroke[,]" *id.*, is a determination for the district court to make in the first instance."); *M.D. ex. rel. Stukenberg v. Perry*, 675 F.3d 832, 841 (5th Cir. 2012) (remanding class certification issue where "the district court's Rule 23(a)(2) analysis was deficient" because

---

[4]  The seven proposed class members ("PCMs") are Darin Stephenson, Erin Thorp, Yvette Wiesemann, Jennifer Anderson, Laura Sage, Chris Hanson, and Jo Anna Williams.  (Pls.' Mem. Class Cert.  2.)  Their declarations were filed with the Court on April 27, 2012.  *See* Dkt. 176–184 ("PCMs Decl.").

the district court did not "look beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of whether this question satisfies commonality") (internal citations omitted). Therefore, the Court addresses the sufficiency of Plaintiffs' evidence regarding each type of alleged violation.

Before delving into the details of Plaintiff's assertions, however, the Court notes several general limitations of the testimonial evidence Plaintiffs offer from putative class members in support of commonality. First, the sample size of Plaintiffs' anecdotal evidence is extremely small. In total, Box and Horodovych offer their deposition testimony and declarations as well as the declarations of seven other proposed class members. Taken together, they represent only 0.19% of the proposed class. While there is no magic number of declarations Plaintiffs must put forth to demonstrate commonality, declarations from less than one quarter of one percent of the proposed class do not provide the Court with a sufficient basis to conclude that Plaintiffs claims are common to the entire proposed class, especially when Plaintiffs have offered no evidence that these nine individuals are representative of the remaining 4,645 proposed class members. *See Dukes*, 131 S.Ct. at 2556 (affidavits from less than 1% of the proposed class did not demonstrate that the entire company operates under a general policy of discrimination); *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 774 (7th Cir. 2013) (affirming decertification of state law wage and hour class where plaintiffs attempted to overcome variance across 2,341 class members by offering testimony from 42 "representative" class members because "[c]lass counsel has not explained . . . how these 'representatives' were chosen – if whether for example they were volunteers, or perhaps selected by class counsel after extensive interviews and hand picked to magnify the damages sought by the class").

Second, Plaintiffs' anecdotal evidence is limited in time. Box and Hodorovych stopped working at Family Video in 2010. (Box Decl. ¶ 2; Hodorovych Decl. ¶ 2.) By Summer 2011, all of the seven proposed class member declarants had stopped working at Family Video. (PCM Decls. ¶ 2.) Yet, the proposed class period covers "May 3, 2008 through the present." (Pls.' Mem. Class Cert. 2.) Thus, Plaintiffs' anecdotal evidence provides no basis for the Court to conclude that Family Video violated the IMWL as to any employees from Summer 2011 to the present.[5]

In short, even if the testimony and declarations from Box, Horodovych, and the seven proposed class member declarants were uniformly consistent in alleging that Family Video engaged in companywide IMWL violations (which, as we shall see, they are not), the Court would be hard pressed to conclude, based on that evidence alone, that Plaintiffs have demonstrated by a preponderance of the evidence that their claims were common to the proposed class and capable of classwide resolution. Plaintiffs rely, however, on more than just this anecdotal evidence. The Court will now address the remaining evidence and the additional shortcomings of Plaintiffs' anecdotal evidence as they relate to each alleged IMWL violation.

A.    **Bank Deposits**

Plaintiffs allege that Family Video required them to take deposits to the bank after clocking out. (Pls.' Mem. Class Cert. 6.) To show that their individual claims are common to the proposed class, they point to Family Video's documented procedures for store closings and bank deposits. The policy provides a checklist employees must follow when closing a store: "(1) punch out; (2) shut down main monitor by going to "User/Exit"; (3) set the alarm and make sure

---

[5] In addition to posing problems for Rule 23(a)(2)'s commonality requirement, the fact that Box and Horodovych ended their employment in 2010 also raises concerns for Rule 23(a)(4)'s adequacy of representation requirement. *See Bolden*, 688 F.3d at 895 ("these 12 plaintiffs can't represent either class, since none of the 12 has worked for [the company] after 2002, even though the classes extend into the indefinite future.")

all doors are locked; and (4) take the final deposit directly to the bank." (Pls.' Mem. Class Cert. 6.) This companywide policy supports Plaintiffs' contention that their individual claims are common to members of the proposed class because the policy explicitly requires employees to clock out before taking the deposit to the bank.

Plaintiffs acknowledge, however, that Family Video changed this policy in May 2011 by allowing employees to enter a special "DEP" code into the store's computer when clocking out before taking a deposit to the bank. (*Id.*) The "DEP" code added a pre-determined number of minutes to the employee's timecard designed to compensate the employee for the time spent making the bank deposit. (*Id.*) Consequently, Family Video's documented policy regarding store closings and bank deposits only supports Hodorovych and Box's contention that their individual claims regarding bank deposits are common to the proposed class until May 2011.

Plaintiffs' proposed class, however, includes "[a]ll current and former Family Video employees . . . since May 3, 2008 *through the present*." (emphasis added). (*Id.* 15.) Because Plaintiffs cannot rely on Family Video's documented policy to show that their individual claims are shared by all Illinois Family Video hourly employees after May 2011, the policy is insufficient to establish commonality across the entire class as it is currently defined.

Separate and apart from the policy, Hodorovych and Box also attempt to demonstrate commonality by pointing to their own declarations and those of seven proposed class members, each of which asserts that Family Video required him or her to make off-the-clock bank deposits. (Pls.' Mem. Class Cert. 2, PCM Decls. ¶ 4.) But rather than supporting Plaintiff's arguments, these declarations demonstrate that whether an employee was required to make an off-the-clock bank deposit depended on the individual store and the people working at the store.

For example, Horodovych worked at three different Family Video stores. (Hodorovych Decl. ¶ 2.) While working at one store, she took deposits to the bank off-the-clock, but while working at the two other stores, she never made a bank deposit. (Hodorovych Dep. 8:17-19, 11:19-23.) Moreover, she testified that at closing the deposit was taken to the bank by "whoever volunteered to, I guess." (Hodorovych Dep. 10:6-11:7.) Similarly, Box worked at four different Family Video stores. (Box Decl. ¶ 2.) At one store, she made off-the-clock bank deposits after closing, but at another she did not, except perhaps on one or two occasions. (Box Dep. 317:21-318:9.) Box also testified that whether she made a bank deposit after closing "depend[ed] on who's working and how they had it worked out among them" and that on some occasions, a manager, who is a salaried employee, took the deposit to the bank. (*Id.* 76:15-77:6, 124:24-125:5.) A Family Video manager confirmed this by submitting a declaration stating that she sometimes takes deposits to the bank after close. (Def.'s Resp. Ex. 13, Decl. Danielle Coleman ¶ 9.) Furthermore, Defendant has submitted declarations from multiple Family Video hourly employees who state that they were never required to make off-the-clock bank deposits. (Def.'s Resp. Ex. 15, Decl. Elliot Forsyth ¶ 11, Ex. 16, Decl. Cressa Gordley ¶ 12; Ex. 17, Decl. Tiffany Lair ¶ 12.)

Because whether a putative class member was required to make off-the-clock bank deposits varied depending upon the particular store and personnel working at the store, Plaintiffs have failed to show by a preponderance of the evidence that their claims regarding off-the-clock bank deposits are "capable of proof at trial through evidence that is common to the class rather than individual to its members." *See Messner*, 669 F.3d at 818. Plaintiffs have not demonstrated that requiring hourly employees to take deposits to the bank off-the-clock was an Illinois-wide Family Video policy, and the individualized inquiry required to determine whether the 4,654

proposed class members who worked across all 115 Illinois stores actually made such deposits is precisely the type of inquiry that precludes class certification. *See Vang*, 488 Fed. Appx. at 147 (vacating and remanding certification of a state law wage and hour class); *Bolden*, 688 F.3d at 896 ("[W]hen multiple managers exercise independent discretions, conditions at different stores (or sites) do not present a common question"); *Ordonez v. Radio Shack, Inc.*, No. CV 10-7060-CAS, 2013 WL 210223, at*8 (C.D. Cal. Jan. 17, 2013) (denying class certification because plaintiffs' claims that they were required to make off-the-clock bank deposits did not depend upon a common contention that was capable of classwide resolution); *Young v. Dollar Tree Stores, Inc.*, No. 11-cv-1840, 2012 WL 3704997, at *4-5 (D. Colo. Aug. 24, 2012) (commonality not satisfied for state law class alleging uncompensated overtime while making bank deposits after work because named Plaintiff failed to show employees at other stores were required to make off-the-clock bank deposits). Thus, Plaintiffs have failed to establish that their individual claims regarding off-the-clock bank deposits are common to the class and capable of classwide resolution.

### B. Errands Without Pay

Box also alleges that Family Video required her to run errands to pick up videos and supplies from other Family Video locations while off-the-clock. To demonstrate commonality, Box relies upon (1) her own declaration and the declarations of five proposed class members who allege that they were required to run similar errands (Box Decl. ¶ 5; Anderson Decl. ¶ 5; Sage Decl. ¶ 5; Stephenson Decl. ¶ 5; Thorp Decl. ¶ 5; Wiesemann Decl. ¶ 5); (2) an email from a Family Video purchasing analyst to a store manager requesting that an employee pick up a particular movie "on their way to work to minimize any impact on staffing levels/customer service;" and (3) an email from the same purchasing analyst to the same manger requesting that

"all stores purchase [particular movies] locally before open tomorrow."  (Decl. Matthew B. George, Supp. Pls.' Class Cert., Dkt. 174 ("George Decl."), Ex. 17, Burns Emails 1-4.)

As with off-the-clock bank deposits, Box fails to establish that her claim regarding off-the-clock errands is common to the class and capable of classwide resolution.  First, whether an employee was required to run an errand of this type depended on the manager on duty in the store.  For example, proposed class member Anderson alleges that "my Store Manager would instruct me to run these errands either before or after my shifts."  (Anderson Decl. ¶ 5.) Similarly, although Box and the other declarants offer no explanation as to who "required" them to run these errands, absent a companywide policy, it is reasonable to infer that they too were instructed to run these errands by a store manager.  Plaintiffs have provided no evidence, however, that all, or even most, store managers instructed employees to run off-the-clock errands.  Indeed, Horodovych and two other declarants do not claim that they were ever required to run errands off-the-clock.  (Horodovych Decl., Hanson Decl., Williams Decl.)  Because this claim depends on the "congeries of supervisor-level practices," it is not capable of classwide resolution and does not satisfy Rule 23(a)(2).  *See Vang*, 488 Fed. Appx. at 147.

In addition to the declarations, Box relies upon two emails from a Family Video purchasing analyst to a store manager.  In one email, the purchasing analyst requested that "all stores purchase [a particular movie] locally before open tomorrow."  (George Decl., Ex. 17, Email from Steve Olson to Karl Burns 4.)  Despite Plaintiffs' contention that this email evidences a companywide policy to purchase movies from other stores off-the-clock, they have presented no evidence that the instructions in the email were sent to more than the individual store to which it was addressed.  Furthermore, the email was sent at 4:19 p.m., well before the

store closed at midnight, and does not mandate that the employees wait until after the store closed to purchase the movie. (*Id.*)

The second email, sent by the same purchasing analyst to the same store manager, requested that an employee pick up a movie "on their way to work to minimize any impact on staffing levels/customer service." (*Id.* 2.) But, again, there is no evidence that this request was part of a broader Family Video policy that directed employees to run errands before they clocked in. In fact, the contrary is true; the email states "[y]our store has been selected to buy [the movie]" and "[t]he quantity above is specific to your store and not all stores are authorized to buy additional copies." (*Id.*) As such, these emails fall short of establishing that Box's individual claim alleging off-the-clock errands is common to the class. *See, e.g.*, *Ordonez*, 2013 WL 210223, at *8 (denying class certification of employees' claims that they were required to make inter-store merchandise transfers because the employees "offer[ed] insufficient evidence that any alleged off the clock work was due to a standardized employment practice, rather than a product of the vagaries of the store an employee worked in, the time of year, or the manager who was in charge").

### C. Travel Time for Special Assignments

Box also contends that Family Video failed to pay employees for all of the time spent travelling to work special assignments, such as store remodels and new-store set-ups. (Pls.' Mem. Class Cert. 8.) To demonstrate commonality, Box relies upon her own declaration and the declarations of two proposed class members, who allege that they were also required to travel to set up new stores and remodel other stores and were not paid for all of the travel time. (Box Decl. ¶ 6; Thorp Decl. ¶ 6; Anderson Decl. ¶ 6.)

These declarations fail, however, to establish commonality because the declarations do not point to any companywide policy regarding the alleged unpaid travel time, and they contain no details as to who "required" the declarants to incur unpaid travel time or why Plaintiffs believed they were required to do so.  For example, Box testified that she travelled twice while working at Family Video – once to a remodel/new store set up in Pena, Illinois, and again to a new store set up in El Reno, Oklahoma.  (Box Dep. 24:13-18.)  She acknowledges, however, that she could have refused to go, and that she chose to go to the Oklahoma store set up to "get a little bit more experience training employees and being a part of something."  (*Id.* 38:19-21, 41:1-9.)  For their part, the declarations from the two proposed class members offer no evidence as to why they believed they were "required" to travel for a special assignment or who imposed such a requirement.  (Thorp Decl. ¶ 6; Anderson Decl. ¶ 6.)  Thus, even the basic answer to the question of whether and under what circumstances an employee was required to incur unpaid travel time would necessitate individual inquiry at the store level, if not the individual employee level.[6]

### D. In-Store, Off-the-Clock Work

Plaintiffs also allege that "Family Video's Payroll and Overtime Policies and Practices" pressured employees to "perform[] off-the-clock work" both before and after their shifts while opening and closing the stores.  (Pls.' Mem. Class Cert. 3-4, 9-11.)  To support this contention, Plaintiffs point to Family Video's overtime policy instructing that overtime "should be avoided

---

[6] Family Video employees enter a special payroll code for store remodels ("REM") and are compensated for travel time on special projects.  (Pls.' Mem. Class Cert. 8-9.)  Box acknowledges that she received compensation for travel time, but, she contends, not enough.  (*Id.* 39:7-19, Box Decl. ¶ 6.)  A special payroll code and travel time compensation for employees who choose to participate in special projects do not, however, establish that Family Video has an Illinois-wide policy that requires employees to travel for special projects off-the-clock.  Additionally, individualized inquiries would be necessary to determine whether an employee was, in fact, not compensated for travel time.  Indeed, when asked about the duration of the travel time for her trip to Pena, Box testified, "I don't remember exactly how long I was in the car."  (Box Dep. 32:4-10, 33:12-22.)

whenever possible" and that it "should be preapproved." (*Id.* 3.) Plaintiffs also direct the Court's attention to Family Video's policy that managers should "make sure that all store operations are handled efficiently and consistently, with the minimum amount of staff necessary to get daily tasks accomplished," as well as Family Video's policy of compensating managers "based on the profitability of the store." (*Id.* 3-4.) Finally, Plaintiffs note that store managers are "questioned" about any overtime that appears on their store's payroll reports because, as one Family Video regional manager stated, "when running a business, you wouldn't want to pay unneeded overtime." (*Id.* 5.) Plaintiffs contend that these policies led to common practices that promoted off-the-clock work. (*Id.* 10.)

In support of their arguments, Plaintiffs again rely upon their declarations and those of seven others. Each of these declarations asserts that "[b]efore and after clocking in and out for my work shifts I was required to perform off-the-clock work," including assisting customers, preparing the store to open, cleaning and maintaining the store, making required phone calls, completing inventory-related tasks, stocking shelves, counting and balancing the cash register, running reports, cleaning the parking lot, and general landscaping (i.e. mowing the grass and trimming the bushes). (Box Decl. ¶ 4, Horodovych Decl. ¶ 4, Thorp Decl. ¶ 4, Sage Decl. ¶ 4, Anderson Decl. ¶ 4, Stephenson Decl. ¶ 4, Wiesemann ¶ 4, Williams Decl. ¶ 4.)

But nowhere do these declarations demonstrate that Family Video had an Illinois-wide policy requiring in-store, off-the-clock work that applied to Family Video employees in all of its Illinois stores. Instead, the declarations paint an inconsistent and individualized picture of off-the-clock work that varies greatly from store to store and from store manager to store manager. For example, at one store where Hodorovych worked, a manager implemented a policy that all employees had to clock-out by 12:15 a.m., regardless of whether there was more work to be

done.  (Horodovych Dep. 14-16, 18, 22.)  Another manager in the same store, however, did not

have such a policy.  (*Id.*)  Similarly, Box worked at one store where employees did not have to

punch out by a specific time when closing, while at another store employees were required to

punch out by 12:15 a.m.  (Box Dep. 124, 255:14-17.)  And, Box explicitly acknowledged that

different store managers could have different polices regarding off-the-clock work.  (Box Dep.

250:9-14.[7])  The same is true for other types of off-the-clock work.  For example, Box contends

that at one store she was required to start working before her shift.  (Box Dep. 200-204.)  But

Defendant submitted declarations from Family Video employees who testified that, in those

instances when they arrived at a store before the beginning of their shift, they only engaged in

personal activities, not work.  (Def.'s Resp. Ex. 17, Decl. Tiffany Lair ¶ 8 (eats breakfast or

listens to the radio); *id.*, Ex. 11, Decl. Carrie Blonn ¶ 9 (picks out a movie or uses the restroom);

*id.*, Ex. Decl. Elliot Forsyth ¶ 9 (talks on cell phone, eats, or talks to other employees about

personal matters); id., Ex. 16, Decl. Cressa Gordley ¶ 7 (drops food off and relaxes).)

The need for such individualized inquiry prohibits certification.[8]  *See Vang*, 488 Fed.

Appx. at 147.  *See*, *e.g.*, *Boelk v. AT&T Teleholdings, Inc.*, No. 12 C 40, 2013 WL 261265, at

*10 (W.D. Wisc. Jan. 10, 2013) (no commonality for state law wage and hour class that alleged

---

[7] In her deposition, Box was asked, "And various store managers could have different policies at their different stores regarding off-the-clock work, right?"  (Box Dep. 250:9-11.)  To which Box answered, "Right."  (*Id.* 250:14.)  Plaintiffs' counsel objected to this question on the grounds that it called for speculation and assumed facts not in evidence.  But as a Family Video employee who had worked for multiple managers in multiple stores, Plaintiff Box would have personal knowledge and could therefore testify about her experience regarding whether different managers at the different stores where she worked had different policies regarding off-the-clock work.

[8] This also applies to Box's allegation that, as an assistant manager, she was required to reconcile bank statements and create weekly employee schedules off-the-clock.  (Box Decl. ¶ 5.)  Box puts forth no evidence, other than her own declaration, to show that other proposed class members were required to reconcile bank statements and create weekly employee schedules off-the-clock.  In fact, proposed class member declarant Williams, who worked as a manager-in-training, never alleges that she was required to perform such tasks.  (Williams Decl.)

meal break restrictions resulted in plaintiffs working for defendants during the break because "whether any meal break restriction foreclosed a technician's use of his break for his own purposes depended on . . . the location, job assignment, and particular supervisor"); *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 444 (S.D. Ind. 2012) (denying certification of state law wage and hour class because "at best, the evidence shows that certain supervisors may have instructed their charges [to perform pre- and post- shif work]" and, therefore, plaintiff's "evidence does not establish a policy or practice of requiring [hourly employees] to perform pre- and post- shift work without compensation") (citing *Vang*, 488 Fed. Appx. at 147 and *Bolden*, 688 F.3d at 899); *Slayton v. Iowa College Acquisition Corp.*, No. 09 C 6977, 2010 WL 3937455, at *3 (N.D. Ill. Oct. 5, 2010) (denying class certification where different mangers handled issues differently and plaintiff could not identify which managers and how many caused hourly employees to be underpaid; "[g]iven this lack of detail, it is difficult to conclude from [plaintiff's] statement that defendant had a widespread practice of directing employees not to record time spent working before their scheduled start time").

### E. Excluding Commissions from Employees' Overtime

Finally, Box alleges that Family Video "illegally shortchanges [its hourly employees] by under calculating their overtime rates of pay." (Pls.' Mem. Class Cert. 11.) To show commonality, Box points to her own declaration and Family Video's companywide policy regarding commissions. (*Id.*)

Under Family Video's policy, retail employees earned commissions for selling promotional items such as discount movie rental cards, previously viewed DVDs, and snack bundles. (*Id.*) Each employee's individual payroll ID number records and tracks his or her commissions, which are subsequently processed for payment monthly. (*Id.*) Based on the

payroll information, Family Video pays its employees overtime at one-and-one half times their base hourly rate of pay, but does not include commissions in the base amount. (*Id.*) For example, in August 2010, Plaintiff Box received 15 minutes of "overtime" pay at 1.5 times her base hourly rate of $10.00 per hour. (*Id.*) During that month, she also earned $72.40 in commissions. (*Id.*) Assuming she earned one-fourth of her monthly commissions each week of the month and this amount was added to her base pay, Plaintiff Box alleges that her "regular rate of pay" for calculating overtime should have been approximately $15.68 instead of $15.00. (*Id.* 11-12.)

Because Family Video's policy excluding commissions from the calculation of overtime pay rates was companywide, Box has sufficiently demonstrated that her individual claims regarding the policy's legality are common to the class and capable of classwide resolution. Indeed, a determination as to the legality of this overtime calculation policy could "resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S.Ct. at 2550. Thus, Box satisfies Rule 23(a)(2)'s commonality requirement for her claim concerning Family Video's overtime rate of pay calculation.

In sum, except for their claim regarding the improper calculation of overtime rates of pay based on commissions, Plaintiffs have failed to show that a classwide proceeding could "generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 131 S.Ct. at 2551 (emphasis in original). The Court now turns to whether commonality with respect to the issue of Family Video's overtime calculation policy is sufficient to warrant certification of Plaintiffs' proposed class.

## II.     Rule 23(b)(3):  Predominance

Under Rule 23(b)(3), to certify a class, the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) predominance is similar to Rule 23(a)(2) commonality, but Rule 23(b)(3)'s predominance requirement is "far more demanding." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-34 (1997); *see also Messner*, 669 F.3d at 814-15.  To satisfy this requirement, common answers to common questions must not only exist, but must *predominate* any necessary individualized inquiries. *See Comcast Corp. v. Behrend*, No. 11-864, 2013 WL 1222646, at *4 (U.S. Mar. 27, 2013).  Moreover, damages must be susceptible to measurement across the entire class, and individual damage calculations cannot overwhelm questions common to the class.  *Id.* at *5.

As the Seventh Circuit has recently stated, "[t]here is no mathematical or mechanical test for evaluating predominance."  *Messner*, 669 F.3d at 814 (citing 7AA Wright & Miller, Fed. Prac. & Proc. § 1778 (3d ed. 2011)).  Rather, the predominance requirement "is satisfied when common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication." *Id.* at 815.  Plaintiffs must show that the elements of their injury are "capable of proof at trial through evidence that is common to the class rather than individual to its members." *Id.* at 814, 818.

As discussed above, Plaintiffs have failed to demonstrate that their individual claims, other than their claim regarding the calculation of overtime pay, are common to the class and capable of classwide resolution.  Consequently, even though they have identified one claim that satisfies Rule 23(a)(2)'s commonality requirement, this issue in and of itself does not *predominate* the otherwise individual claims alleging other IMWL violations.  In fact, the

location and manager-dependent nature of the remainder of Plaintiffs' claims destroys Rule 23(b)(3) predominance. *See*, *e.g.*, *Strait v. Belcan Engineering Group Inc.*, No. 11 C 11306, 2012 WL 5988877, at *17 (N.D. Ill. Nov. 29, 2012) (no Rule 23(b)(3) predominance for proposed IMWL class where proposed class members worked at different locations for different managers); *Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 354-55 (N.D. Ill. Oct. 4, 2012) (Rule 23(b)(3) predominance not satisfied in IMWL action where proposed class members worked in different locations, in different departments, for different supervisors); *Franks v. MKM Oil, Inc.*, No. 10 CV 00013, 2012 WL 3903782, at *6 (N.D. Ill. Sept. 7, 2012) (predominance requirement not met by proposed IMWL class because "the Court would have to conduct an analysis of each individual employee, how long they worked for [the company], and make individual calculations to determine whether they failed to receive the minimum wage or overtime pay"); *Doyel v. McDonald's Corp.*, No. 08 C 1198, 2010 WL 3199685, at *4 (E.D. Mo. Aug. 12, 2010) (Rule 23(b)(3) predominance not satisfied because "the Court cannot determine on a classwide basis whether an employee was require to make a bank deposit . . . off the clock" due to the necessary individualized inquiry into "whether the employee worked off the clock, for how long, and did he report the time worked").

Thus, Plaintiffs have failed to show that common issues *predominate* the individualized inquiries that would be necessary. After a "rigorous analysis," the Court concludes that the prerequisites of Rule 23 have not been satisfied, and Plaintiffs' proposed class cannot be certified. *Dukes*, 131 S.Ct. at 2551.[9]

---

[9] Because Plaintiffs cannot satisfy Rule 23(b)(3), the Court need not address Defendant's argument that Plaintiffs' proposed class fails to satisfy Rule 23(a)(4)'s adequacy requirement. Defendant also argues that, in the alternative, the Court should deny class certification for lack of subject matter jurisdiction. (Def.'s Resp. 30-31.) The Court will address this argument separately in an order regarding Defendant's motion to dismiss Plaintiffs IMWL claims for lack of subject matter jurisdiction [222].

**Conclusion**

For the reasons herein, the Court denies Plaintiffs' motion for class certification [170].


**SO ORDERED**                              **ENTER:  4/15/13**


**JOHN Z. LEE,**
**U.S. District Judge**