IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARVETTE SMITH, NATALIE HODOROVYCH, ERIN BOX, and BLAKE BREZINSKY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FAMILY VIDEO MOVIE CLUB, INC.,<br><br>Defendant. | Case No. 11 C 1773<br><br>Judge John Z. Lee |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Darvette Smith, Natalie Hodorovych, Erin Box, and Blake Brezinsky, on behalf of themselves and all others similarly situated, have sued Family Video Movie Club, Inc. ("Defendant"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and state minimum wage laws. In 2012, Plaintiffs' collective action was conditionally certified under the FLSA. Defendant has since filed a motion to decertify the collective action, arguing that Plaintiffs' claims are too individualized. In opposition to Defendant's motion to decertify, Plaintiffs have offered an expert, Mr. David M. Breshears ("Breshears"). Breshears seeks to support Plaintiffs' position by opining that damages for all Plaintiffs in the collective action can be calculated by applying the same mathematical formulas to each Plaintiff's claims, and by way of illustration, calculates the damages for eight members of the collective action. In turn, Defendant now brings a motion *in limine* to preclude Breshears's opinions from entering into evidence.[1] For the reasons set forth herein, the Court denies Defendant's motion *in limine*.

---

[1] In support of its motion *in limine*, Defendant has also attached a report written by its own expert, Dr. Ali Saad, *see* Def.'s Mot. *in Limine*, Ex. B, Saad Report ("Saad Report"), and Plaintiffs object to the

## Legal Standard

District courts have broad discretion to rule on evidentiary issues prior to trial. *See United States v. Chambers*, 642 F.3d 588, 594 (7th Cir. 2011). Accordingly, "[a]lthough the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). A district court will only grant a motion *in limine* to exclude evidence if that evidence is clearly inadmissible for any purpose. *See Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997); *Townsend v. Benya*, 287 F. Supp. 2d 868, 872 (N.D. Ill. 2003). Furthermore, it is within a district court's discretion to adjust a ruling on a motion *in limine* as the proceedings unfold. *See Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 565 (7th Cir. 2006) (citing *Luce*, 469 U.S. at 41–42).

## Discussion

Defendant challenges Breshears testimony on various grounds arguing that it is barred by (1) Federal Rule of Evidence 702; (2) Federal Rule of Evidence 403; and (3) Federal Rule of Civil Procedure 37(c)(1).[2] The Court addresses each argument in turn.

### I. Federal Rule of Evidence 702

Defendant first seeks to preclude the testimony of Plaintiffs' expert, Mr. David M. Breshears, on the grounds that his testimony is inadmissible under Federal Rule of Evidence 702. The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the

---

Saad report. *See* Pls.' Opp'n Def.'s Mot. *in Limine* 10-13. The Court has considered Plaintiffs' objection but declines to rule on the admissibility of Dr. Saad's report because it is not material to the Court's decision.

[2] In its reply, Defendant also argues that "Plaintiffs should be judicially estopped, equitably estopped, and deemed to have waived request for . . . individualized discovery of opt-in class members." Def.'s Reply 3. The production of discovery relating to opt-in class members is beyond the merits of Defendant's motion *in limine*, and the Court can address the discovery matter at an appropriate time.

Supreme Court's seminal case, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005) ("At this point, Rule 702 has superseded *Daubert*, but the standard of review that was established for *Daubert* challenges is still appropriate."). By its terms, Rule 702 allows the admission of testimony by an expert, someone with the requisite "knowledge, skill, experience, training, or education[,]" to help the trier of fact "understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702. Experts are permitted to testify when their testimony is (1) "based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.*

*Daubert* requires the district court to act as the evidentiary gatekeeper, ensuring that Rule 702's requirements of reliability and relevance are satisfied before allowing the finder of fact to hear the testimony of a proffered expert. *See Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999). District courts have broad discretion in determining the admissibility of expert testimony. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 810 (7th Cir. 2012) ("we 'give the district court wide latitude in performing its gatekeeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable'") (quoting *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011)).

Before admitting expert testimony, district courts employ a three-part analysis: (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *Bielskis*, 663 F.3d at 893-94. Under this analytical framework, "shaky

expert testimony may be admissible, assailable by its opponents through cross-examination," and criticisms of the testimony's quality speak not to admissibility but to the weight the testimony should be accorded by the trier of fact. *Metavante Corp. v. Emigrant Savings Bank*, 619 F.3d 748, 762 (7th Cir. 2010) (quoting *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010)). The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

Defendant asserts that Breshears is not qualified to opine on damages calculations, that his methodology is unreliable, and that his testimony would serve to confuse, rather than assist, the trier of fact.

### A. Breshears's Qualifications

Defendant first argues that Breshears is unqualified to give expert testimony regarding a method for calculating Plaintiffs' damages because he is not a statistician. "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton*, 593 F.3d at 616 (quoting *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990)). Federal Rule of Evidence 702 does not require expert witnesses to have graduate degrees or to offer testimony that is scientific in nature. *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000). Here, Breshears intends to offer testimony that Plaintiffs' compensation records show that they were not paid overtime wages at the proper rate of pay, and that Plaintiffs' damages can be calculated by plugging variables into a single formula that can determine individualized damages for each Plaintiff in the collective action. *See* Breshears Decl. Supp. Pls.' Opp'n Def.'s Mot. Decertify Collective Action, Ex. 1

4

("Breshears Report") ¶¶ 14–17. The Court finds that Breshears is qualified to testify as to the potential damages resulting from Defendants' alleged violations of the FLSA using eight Plaintiffs as examples.

Breshears possesses the necessary knowledge, skill, and experience to testify as to how he calculated Plaintiffs' alleged damages. Breshears has a Bachelor of Science in Accounting, and he has worked as a Certified Public Accountant for the accounting firm Hemming Morse, LLP for the past fifteen years. *See* Def.'s Mot. *in Limine*, Ex. A, Breshears Dep. ("Breshears Dep.") 8:2–3, 36:21–23. He has worked in his firm's Litigation and Forensic Consulting Department since about 2004. *Id.* 36:15–19. As an expert in economic damages, Breshears has given presentations on damages calculations in Continuing Education courses for the State Bar of California, taught classes on wage and hour damages at Golden Gate University, and testified in a number of other cases where wage and hour damages were at issue. *Id.* 32:20–24, 47:12–13; Breshears Report, Ex. 1 at 1–2.

Certified Public Accountants can be qualified to opine as expert witnesses on the issue of damages calculations. *See Smart Marketing Group, Inc. v. Publ'ns Int'l, Ltd.*, No. 04-C-146, 2014 WL 624933, at **1–2 (N.D. Ill. Feb. 18, 2014) (finding that a Certified Public Accountant was qualified to give expert testimony on economic damages); *Tuf Racing Prods.*, 223 F.3d at 591 (finding that damages calculations were "well within the competence of a C.P.A." under the principles of *Daubert*). Because Breshears is an educated accountant with specialized experience in the area of economic damages, especially wage and hour damages, the Court finds that Breshears is qualified to testify as to how he calculated Plaintiffs' alleged damages.

Defendants argue that Breshears's testimony should be precluded on the grounds that Breshears has no background in statistics. *See* Def.'s Mot. *in Limine* 14. This argument,

5

however, is inapposite because, as described below, no training in statistics is needed to calculate Plaintiffs' damages using the method Breshears has proposed. If Breshears planned to testify that Plaintiffs' damages could be accurately determined by extrapolating the damages of a statistically significant sample of Plaintiffs to all members of the collective action, Defendants' argument might have merit. But Breshears intends to offer no such testimony. Pls.' Opp'n Def.'s Mot. *in Limine* 8; Breshears Dep. 104:17–18 ("I'm not saying any extrapolation would be done. I'm saying that individual information would be reviewed[.])". Instead, he intends to testify about damages he calculated for individual Plaintiffs using his accounting experience. Thus, Breshears's lack of training in the field of statistics has no bearings on his qualifications in this case.

For these reasons, the Court finds that Breshears is qualified as an expert under Federal Rule of Evidence 702 to testify to the opinions he has offered in this case.

### B. Breshears's Methodology

Next, Defendant argues that Breshears's testimony should be precluded on the grounds that his opinions are not reliable. To be admissible under Federal Rule of Evidence 702, expert testimony must be "based on a correct application of a reliable methodology" that the expert "considered sufficient data to employ." *Stollings v. Ryobi Tech., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013). District courts have "considerable leeway in deciding ... how to go about determining whether particular testimony is reliable," and there is no "definitive checklist or test" that courts must use in making this determination. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150, 152 (1999). Rather, the determination of reliability involves a flexible inquiry that depends on the particular facts and circumstances of each individual case. *Id.* at 150.

In the present case, it does not require highly specialized expertise for the Court to verify that Breshears's methodologies are reliable, given that his opinions are based on relatively straightforward mathematical calculations. Consequently, the Court finds that Breshears's opinions are based on a reliable methodology.

First, Breshears opines that Defendant underpaid Plaintiffs' overtime wages by failing to include commission wages when calculating Plaintiffs' regular rate of pay. Breshears Report ¶ 14. He also opines that the amount of overtime wages due each Plaintiff for on-the-clock hours worked can be calculated on an individual basis using the same mathematical formula. *Id.* ¶ 17. In reaching these conclusions, Breshears relies upon data documented in Plaintiffs' timesheets and Defendant's payroll records, as well as other information supplied by Plaintiffs' counsel.[3] *Id.* ¶¶ 23, 25, 28–29.

The total number of hours each Plaintiff recorded each week can be determined from Plaintiffs' timesheets, and the amount that each Plaintiff was paid per week in hourly wages and commissions can be determined from Defendant's payroll records. *See id.* ¶¶ 25–28. When provided with these three data points (total hours worked per week, total hourly wages paid per week, and commissions paid) for any individual Plaintiff, Breshears has demonstrated that he can calculate the overtime wages that individual should have been paid.[4] *See id.* ¶¶ 25–33. In

---

[3] For example, counsel informed Breshears that Plaintiffs' commission payments were typically made in the month directly following the month in which they were earned, so Breshears was able to allocate commissions payments accordingly in his calculations. *See* Breshears Report ¶ 29. Counsel also informed Breshears of the relevant law bearing on the proper method of calculating regular rates of pay and overtime premium wages. *Id.* ¶¶ 7–8, 31.

[4] Offering their own rebuttal expert, Defendant argues that Breshears's method of calculation is unreliable on the grounds that Plaintiffs claim damages for off-the-clock hours worked, but that these off-the-clock hours were not included in the total hours worked per week on which Breshears's calculations were based. *See* Saad Report ¶ 12. The Court agrees that, if Defendant is ultimately found liable for off-the-clock hours worked, the calculation of overtime wages must account for those off-the-clock hours. This fact, however, does not render Breshears's testimony inadmissible; it merely adds a variation to his proposed calculation methodology that could easily be taken into account at a later stage of these

turn, Breshears can then compare this amount to the actual amount of overtime wages paid—as his Report has done with regard to eight Plaintiffs for illustrative purposes—and thereby determine whether Defendant calculated Plaintiffs' overtime wages properly.[5] *See id.* ¶¶ 34–37.

Breshears also intends to testify that damages for uncompensated time Plaintiffs spent working off-the-clock can also be calculated by applying a common mathematical formula to each Plaintiff's circumstances. *Id.* ¶¶ 15–17. More specifically, for any given Plaintiff, information about the number of work hours clocked each week and approximations of off-the-clock time spent making bank deposits and performing other tasks can be used to calculate the amount for which Defendant may be liable for overtime hours worked off-the-clock: off-the-clock hours worked in excess of forty hours per work-week can be multiplied by the appropriate rate of overtime pay to determine damages for any given Plaintiff. *Id.* ¶¶ 39–50.

Given the data he considered and the calculations he used to arrive at individual Plaintiffs' damages, the Court finds that Breshears's methodology is sufficiently reliable to allow him to testify that Defendant failed to properly account for commission wages in the calculation

---

proceedings. *See* Breshears Report ¶ 37 (concluding that a uniform calculation methodology can be used to determined overtime wages owed "with or without the inclusion of any additional Off-the-Clock time").

[5] To give a hypothetical example for illustration, suppose an employee works for 45 hours in a given week at an hourly wage of $10 per hour, and also receives a commission for the week's work in the amount of $50. His regular rate of pay, for purposes of calculating overtime wages is then $11.11 per hour. This is because the $50 commission, divided by the 45 hours worked total in the week corresponding to the commission, equals approximately $1.11, and $10 plus $1.11 equals $11.11. *See* FLSA, 29 U.S.C. § 207(e); 29 C.F.R. § 778.118–.119 (providing that, when employees are paid both an hourly wage and commissions, the regular rate of pay is determined by adding the hourly wage to the amount of the commission divided by the total number of hours worked in the time period to which the commission corresponds). If the regular rate of pay is $11.11 per hour, then the overtime rate of pay is $16.67 per hour (one and a half times $11.11). *See* FLSA, 29 U.S.C. § 207(a)(1) (providing that employers must pay employees at an hourly rate of no less than one and one-half times the employees' regular rate of pay for any hours worked in excess of forty hours a week). Thus, the employee's total wages for the week should be $533.33 ($10 per hour for the first 40 hours worked, plus $16.66 for the 5 overtime hours worked, plus the $50 commission).

of Plaintiffs' overtime wages, and that the correct amount of wages due can be calculated for each Plaintiff using the same mathematical formulas.

Defendant attacks the reliability of Breshears's methodology, noting that he does not have testimony regarding each opt-in class members' off-the-clock work. Def.'s Mot. *in Limine* 6-7. As explained above, however, Breshears is not offering testimony regarding all Plaintiffs' specific damages in the collective action. Instead, he intends to offer testimony that damages can be calculated by plugging variables into a single formula and offers eight Plaintiffs as examples. *See* Breshears Report ¶ 17 ("I prepared calculations of the potential damages due for the following eight individuals as an example of the calculation methodology that could be used for all class members."). Thus, Breshears's methodology is reliable even though he does not have evidence regarding every class members' off-the-clock work at this point in the litigation.

Defendant also challenges Breshears's use of average estimations of off-the-clock time worked—based on Plaintiffs' interrogatory responses and depositions—which he used to calculate eight Plaintiffs' damages for illustrative purposes. Def.'s Mot. *in Limine* 8, 11. Breshears's expert testimony, however, is not offered to prove the actual amount of off-the-clock hours worked. Rather his testimony and the illustrative calculations are offered to show that, if and when the amount of off-the-clock hours is determined for each Plaintiff, Breshears can use his formula to calculate damages. To the extent that Defendant's argument harps on the precise amount of these potential inputs, it speaks not to the fundamental reliability of Breshears's methodology, but to the weight that his testimony ought to be accorded. *See Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 372 F. Supp. 2d 1104, 1119–20 (N.D. Ill. 2005) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect only the weight to be assigned that opinion rather than its admissibility"); *Cf. Smart Marketing Group*, 2014 WL

624933, at *3 (finding that criticisms of the particulars of damages expert's calculations and factual assumptions were issues that "[did] not affect the admissibility of his opinion but rather [went] to its weight").

Accordingly, the Court finds that Breshears's methodology is sufficiently reliable for purposes of Federal Rule of Evidence 702.

### C. Assisting the Trier of Fact

Defendant also challenges Breshears's expert testimony on the grounds that the damages calculation formulas he has developed are so simple and basic that they could be done by the jury itself, and that thus his testimony would not assist the trier of fact as required by Federal Rule of Evidence 702. For reasons already discussed above, the Court agrees that Breshears's opinions rely on basic mathematical computations that are relatively simple to understand. The simplicity underlying his methodology does not, however, render his opinion unhelpful to the trier of fact. As the Seventh Circuit has stated, "[a] jury cannot keep in mind all of the figures that might enter into a determination as to whether overtime payments were due. Computations and summaries based upon evidence before the Court, in many instances, would be very helpful to a jury." *Wirtz v. Turner*, 330 F.2d 11, 14 (7th Cir. 1964) (holding that expert testimony of an accountant on the issue of damages calculations under the FLSA would assist the trier of fact and was ultimately admissible). Accordingly, given the various categories of compensatory damages Plaintiffs seek in this collective action, as well as the multi-stepped processes needed to calculate those damages, the Court finds that Breshears's opinion will assist the trier of fact. *See* Breshears Report ¶¶ 25-56 (describing formulas used to calculate actual wages paid, regular rate of pay, overtime wages for off-the-clock work, gap time regular wages, and credits against damages owed).

For the reasons stated herein, the Court finds that Breshears is qualified to give the testimony he offers, has employed reliable methodologies, and will assist the trier of fact by testifying. The Court therefore denies Defendant's motion to preclude Breshears's expert testimony pursuant to Federal Rule of Evidence 702.

## II. Federal Rule of Evidence 403

Next, Defendant seeks to preclude Breshears's expert testimony under Federal Rule of Evidence 403, which provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Defendant's entire Rule 403 argument is based upon the premise that Breshears's methodology is unreliable. Def.'s Mot. *in Limine* 14 ("For the same reasons, Breshears should be excluded pursuant to Rule 403 because the unreliability of his opinions"). The Court also rejects Defendant's Rule 403 argument.

Breshears's testimony has probative value because it speaks to the issues of whether Defendant properly calculated Plaintiffs' overtime rates of pay and how Plaintiffs' total damages might ultimately be determined, as well as the extent to which each Plaintiff's claims are similar to the claims of other members in the conditionally certified collective action. Furthermore, as addressed above in the Court's discussion of Rule 702, Breshears's methodology is reliable and his testimony would assist the trier of fact. Accordingly, the Court does not agree that the probative nature of his testimony is substantially outweighed by a danger of unfair prejudice, confusing the jury, or wasting time, or that it would waste time.

The Court therefore denies Defendant's motion to preclude Breshears's testimony pursuant to Federal Rule of Evidence 403.

### III. Timeliness of Plaintiffs' Damages Calculations

Finally, Defendant argues that Breshears's testimony is precluded because it is untimely. Defendant first points to Federal Rule of Civil Procedure 26(a)(1)(A)(iii), which requires a plaintiff's initial discovery disclosures to include "a computation of each category of damages claimed by the disclosing party." Defendant then points to Rule 37(c)(1), which provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), *the party is not allowed to use that information* or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless.*

Fed. R. Civ. P. 37(c)(1) (emphasis added). Defendant asserts that Plaintiffs may not now offer Breshears's testimony on damages calculations into evidence, because Plaintiffs did not first include damages calculations in their Rule 26(a) initial disclosures.

Whether a party's failure to strictly comply with Rule 26(a) is "substantially justified" or "harmless" within the meaning of Rule 37(c)(1) is a question within the broad discretion of the district court. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). In exercising this discretion, the court should consider: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Id.*

Here, Plaintiffs have not delayed in bad faith: they indicated unambiguously in their initial Rule 26(a) disclosures that final damages could not be calculated until later in the proceedings.[6] *See* George Decl., Pls.' Opp'n Def.'s Mot. *in Limine*, Ex. G, Pls.' Initial

---

[6] Specifically, Plaintiffs' 26(a)(1) initial disclosures provide:

Plaintiffs, on behalf of themselves and members of the proposed classes, seek damages in the form of unpaid wages, including overtime wages .... The exact calculation of Plaintiffs' and class members' damages will vary somewhat based [on] their hourly rates

Disclosures at 4. Given Plaintiffs' forthrightness regarding this matter, the Court does not find—and Defendant does not identify—any prejudice or surprise arising from Plaintiffs' delayed ability to calculate an exact amount of damages. Accordingly, the Court finds that Plaintiffs' delay is harmless for purposes of Rule 37(c)(1). *Cf. Malik v. Falcon Holdings, LLC*, No. 10-C-3451, 2011 WL 6841532, at **3–4 (N.D. Ill. Dec. 29, 2011) (holding that the employee-plaintiff's failure to disclose an exact damages amount in his Rule 26(a)(1) initial disclosures did not prejudice or harm the employer-defendant when any damages awarded would be based on back wages, front wages, and liquidated damages); *Jonathan Pepper Co., Inc. v. Hartford Cas. Ins. Co.*, 520 F. Supp. 2d 977, 981 n.1 (N.D. Ill. 2007) (declining to impose sanctions under Rule 37(c)(1) when the defendant had not articulated a basis for prejudice).

For these reasons, the Court finds that Plaintiffs' failure to comply with the letter of Rule 26(a)(1)(A)(iii) was harmless, and the Court therefore denies Defendant's motion to preclude Plaintiffs' expert or otherwise sanction Plaintiffs pursuant to Rule 37(c)(1).

---

of pay, commissions, non-discretionary bonuses, and their hours of work . . . . There are also legal issues yet to be resolved which will determine the amount of recoverable damages . . . . Therefore, it is difficult to provide a precise computation of damages for Plaintiffs and the class at the juncture of the case. However, Plaintiffs will be able to do so at trial after necessary discovery is completed and the proposed classes are ascertained.

George Decl., Pls.' Opp'n Def.'s Mot. *in Limine*, Ex. G, Pls.' Initial Disclosures at 4.

## Conclusion

For the reasons provided herein, the Court denies Defendant's motion *in limine* to preclude Plaintiffs' expert [358].

**SO ORDERED**            **ENTER:**

_____
**JOHN Z. LEE**
**United States District Judge**