# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **DARVETTE SMITH et al.,** | ) | |
| **individually and on behalf of** | ) | |
| **others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **11-cv-1773** |
| | ) | |
| **v.** | ) | **Judge John Z. Lee** |
| | ) | |
| **FAMILY VIDEO MOVIE CLUB, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Family Video Movie Club is a chain of stores that rents and sells DVDs and video games to consumers. The company has stores in 19 states, including Illinois, and it employs over 7000 people. Plaintiffs are former Family Video employees who claim that the company violated the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*, and the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.*, by underpaying them. They have filed their second motion for certification of their state law claims under Federal Rule of Civil Procedure 23. Since the Court denied their first Rule 23 motion, Plaintiffs have narrowed their claims and class definitions and have provided significant evidence that their remaining claims are suited to class-wide adjudication. For those reasons, explicated below, the Court grants the motion.

## I. FACTUAL & PROCEDURAL BACKGROUND

More detailed background information can be found in the Court's orders of April 15, 2013, and March 31, 2015. The Court presumes familiarity with those orders and will repeat information only as needed to explain the resolution of Plaintiffs' current motion.

**A. Plaintiffs' Amended Complaint**

Plaintiffs allege that their former employer, Family Video, systematically underpaid them and other current and former employees by miscalculating their rates of overtime pay and by not paying them for all hours worked. Doc. 22. They claim that these actions violated provisions of the Fair Labor Standards Act (FLSA) and the Illinois Minimum Wage Law (IMWL).

The FLSA requires that an employee's overtime pay rate be based on an hourly rate that includes any commission payments. 29 C.F.R. § 778.117. Plaintiffs allege that Defendant paid employees commission on certain sales but did not factor those payments into its calculation of overtime rates. Plaintiffs also allege that Defendant did not pay them for time spent making bank deposits. The IMWL incorporates the overtime provisions of the FLSA by reference, and the two laws are applied in the same way. See *Urnikis–Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 672 n. 3 (7th Cir. 2010) ("The overtime provision of the Illinois Minimum Wage Law, 820 ILCS 105/4a(1), is parallel to that of the FLSA, and Illinois courts apply the same principles ... to the state provision.").

Plaintiffs' amended complaint also includes allegations that Defendant failed to pay them for "off-the-clock" work other than delivering bank deposits. As explained below, they have since dropped any claim based on those allegations, but the allegations remain relevant because Defendant relies upon them to oppose the current motion for class certification.

**B. Previous Motions To Certify Class Claims**

Since filing this lawsuit in 2011, Plaintiffs have taken steps to pursue their claims on behalf of similarly situated individuals as well as themselves. They first moved for conditional certification of an FLSA collective action. Doc. 68. The standard for conditional FLSA certification is lenient, requiring only "a minimal showing that others in the potential class are

similarly situated." *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008). After conditional certification has been granted and discovery has clarified the factual situation, the defendant may move to decertify the action. *Id.* The Court granted Plaintiffs' motion for conditional certification. *Smith v. Family Video Movie Club, Inc.*, No. 11 C 1773, 2012 WL 580775 (N.D. Ill. Feb. 22, 2012).

Plaintiffs then moved for the first time to certify their IMWL class claims under Federal Rule of Civil Procedure 23. The Rule 23 standard for certification is significantly more demanding than the lenient standard for conditional FLSA certification. Applying that more-stringent standard, the Court denied Plaintiffs' motion. Regarding the bank deposit claim, the Court explained that Plaintiffs had "not demonstrated that requiring hourly employees to take deposits to the bank off-the-clock was an Illinois-wide Family Video policy, and the individualized inquiry required to determine whether the 4,654 proposed class members who worked across all 115 Illinois stores actually made such deposits is precisely the type of inquiry that precludes class certification." *Smith v. Family Video Movie Club, Inc.*, No. 11 CV 1773, 2013 WL 1628176, at *6 (N.D. Ill. Apr. 15, 2013). The Court also explained that the other claims based on off-the-clock work were too varied for class-wide adjudication. *Id.* at *9. Finally, the Court concluded that Plaintiffs' claim based on the miscalculation of overtime pay was capable of class-wide resolution, but "even though they have identified one claim that satisfies Rule 23(a)(2)'s commonality requirement, this issue in and of itself does not predominate the otherwise individual claims alleging other IMWL violations." *Id.* at *11.

Discovery proceeded, and Defendant moved to decertify Plaintiffs' conditionally certified FLSA collective action. Doc. 327. In deciding motions to decertify FLSA claims, courts in this circuit hold plaintiffs to a standard akin to that of Rule 23. *Espenscheid v. DirectSat USA, LLC*,

705 F.3d 770, 772 (7th Cir.2013). Defendant argued in its motion to decertify that, because the Court had refused to certify Plaintiffs' IMWL claims under Rule 23, the FLSA claims should be decertified as well.

Plaintiffs responded to the company's motion to decertify by presenting new evidence of a class-wide bank deposit policy obtained during discovery and by substantially narrowing their class definitions. *Smith v. Family Video Movie Club, Inc.*, No. 11 C 1773, 2015 WL 1542649, at *1 (N.D. Ill. Mar. 31, 2015). As a result, the Court largely denied Defendant's motion and allowed the FLSA collective action to move forward. *Id.* at *9. Although the Court concluded that the proposed class of employees who did various types of "off-the-clock" work was not amenable to collective resolution because no company-wide policy applied, the Court permitted Plaintiffs to pursue their FLSA claims on behalf of two other subclasses. The first is made up of "[a]ll opt-in Plaintiffs who worked more than 40 hours in a workweek without receiving applicable overtime premiums that included commission pay from March 14, 2008, through March 14, 2011." *Id.* The second is "[a]ll opt-in Plaintiffs who worked more than 40 hours in a workweek that took Family Video's bank deposits off-the-clock from March 14, 2008 through March 14, 2011." *Id.*

**C. Defendant's Motion To File an Interlocutory Appeal**

Following the Court's denial of the motion to decertify the FLSA claims, Defendant moved under 28 U.S.C. § 1292(b) for permission to file an interlocutory appeal. Doc. 377. Motions under § 1292(b) may be granted only if they raise a controlling, disputed question of law that, if resolved, will move the litigation along more quickly. *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000). Defendant proposed to argue on appeal that district courts must apply the Rule 23 framework when deciding a motion to decertify FLSA

collective actions. Doc. 377 ¶ 4. The Court denied Defendant's motion, explaining that it had "relied on Rule 23 cases throughout its opinion to inform its analysis of decertification" and that, under those circumstances, an interlocutory appeal was not likely to lead to a different outcome on the motion to decertify. Doc. 395 at 6.

## II. LEGAL STANDARD

Plaintiffs now move for a second time to certify their IMWL class claims under Federal Rule of Civil Procedure 23. Under Rule 23(a), class certification is permitted only if these four requirements are met: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

If Rule 23(a) is satisfied, the proposed class must also fall within one of three categories in Rule 23(b), which the Seventh Circuit has described as: "(1) a mandatory class action (either because of the risk of incompatible standards for the party opposing the class or because the risk that the class action adjudication would, as a practical matter, either dispose of the claims of nonparties or substantially impair their interests), (2) an action seeking final injunctive or declaratory relief, or (3) a case in which the common questions predominate and class treatment is superior." *Spano v. The Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011).

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "On issues affecting class certification . . . a court may not simply assume the truth of the matters as asserted by the plaintiff." *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012). Rather, the named plaintiff bears the burden of showing

that a proposed class satisfies each requirement of Rule 23 by a preponderance of the evidence. *Id.* "Failure to meet any one of the requirements of Rule 23 precludes certification of a class." *Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993). Certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Dukes*, 131 S.Ct. at 2551. The Seventh Circuit has directed district courts to exercise "caution in class certification generally." *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 746 (7th Cir. 2008).

Finally, although "as a general principle, a court is not allowed to engage in analysis of the merits in order to determine whether a class action may be maintained [,] . . . the boundary between a class determination and the merits may not always be easily discernible." *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598-99 (7th Cir. 1993) (internal citations and quotations omitted). Consequently, "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.*; *see also Dukes*, 131 S.Ct. at 2551 (class certification analysis "[f]requently . . . will entail some overlap with the merits of the plaintiff's underlying claim"). As the Seventh Circuit has held, "a district court must make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010); *see Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 889-90 & n.6 (7th Cir. 2011).

# III. ANALYSIS

In their motion to certify their IMWL class claims under Rule 23, Plaintiffs propose to use the class definitions that the Court approved for their FLSA claims. The first class is the "Commission Class":

> All current and former employees of Family Video retail stores in Illinois who were paid on an hourly basis and who worked more than 40 hours in a workweek without receiving applicable overtime premiums that included commission pay from March 14, 2008, through March 14, 2011.

The second is the "Bank Deposit Class":

> All current and former employees of Family Video retail stores in Illinois who were paid on an hourly basis, worked more than 40 hours in a workweek, and took Family Video's bank deposits while off-the-clock between March 14, 2008 and March 14, 2011.

They contend that these classes satisfy all requirements for Rule 23 certification. Family Video responds that certification is unwarranted for a multitude of reasons.

As foreshadowed above, in the background of the current dispute is the Court's denial of Defendant's motion to decertify Plaintiffs' FLSA collective action. The Seventh Circuit has explained that the standards for certification under Rule 23 and the FLSA (final certification rather than conditional) have "largely merged." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013). This merger means that, if a collective action has been certified under the FLSA, certification of the same class claims under Rule 23 is likely to be appropriate also. (The main difference between the two types of actions, irrelevant here, is that class members must opt *in* to an FLSA class but are automatically part of a Rule 23 class unless they opt *out*. *Id.*) The Seventh Circuit has not declared the Rule 23 and FLSA certification standards to be identical, though, so a separate analysis is required. Still, the Court's reliance throughout the FLSA opinion on Rule 23 cases, *see Smith v. Family Video Movie Club, Inc.*, No. 11 C 1773,

2015 WL 1542649 (N.D. Ill. Mar. 31, 2015), makes the conclusions in that opinion highly relevant to the Rule 23 analysis.

**A. Ascertainability**

In addition to considering whether the requirements of Rule 23 are met, the Court must assess whether class members are ascertainable. Class certification is inappropriate when "there is no way to know or ascertain who is a member of the class." *Jamie S. v. Milwaukee Pub. Schools*, 668 F.3d 481, 495 (7th Cir. 2012). Plaintiffs explain that members of both classes can be identified using the company's own records. Pls. Mem. at 13. They provide this description of the records they intend to use:

> Family Video's POS computer system maintains records of the times employees were actually clocked in, their commissioned sales, and when they took a bank deposit. Opp'n to Decert., George Decl., Ex. 2 Nall Dep. (82:22-84:24, 112:8-115:3). . . . Family Video also maintains paper and electronic records of bank deposit slips, including the times they were taken, and it has conducted its own "time study" of how long it may take to complete a deposit from each store. Opp'n to Decert., George Decl., Ex. 29; Ex. 3 Robinson Dep. (12:12-13:23, 80:13-83:12); Ex. 5 Baker Dep. (80:22-81:6, 82:14-17).

*Id.* at 11.

Defendant responds that the members of Plaintiffs' proposed classes cannot be ascertained. Resp. Br. at 10–12. To be a member of either class, an employee must have worked more than 40 hours in a week, and the company first argues that the records Plaintiffs propose to rely upon are insufficient to show which employees did so. Plaintiffs, Defendant points out, have given sworn testimony that they did off-the-clock work, including cleaning and stocking shelves, that is not documented anywhere. Although plaintiffs no longer rely on that off-the-clock work for any of their claims—they have even dropped their individual claims based on that work— Defendant says they "cannot pretend" that evidence of off-the-clock work "no longer exists." *Id.* at 10.

Essentially, Defendant's argument is that class certification should be denied because the company may have failed to pay its employees for even more work than Plaintiffs rely upon to identify class members. This argument is creative but unavailing. The Court agrees with Plaintiffs that Defendant should not benefit any more than is necessary from its own allegedly poor record keeping. To accept the argument would "effectively immunize[] defendants from liability because they chose not to maintain records" of employees' work. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 668 (7th Cir. 2015) (rejecting the stringent ascertainability standard adopted by the Third Circuit). And the danger that Plaintiffs' proposed classes ultimately will include somewhat fewer members than they might if all off-the-clock work was accounted for is not a reason to deny certification in this case. "When it comes to protecting the interests of absent class members, courts should not let the perfect become the enemy of the good." *Id.* at 666. Moreover, any putative class member who wants to seek compensation for undocumented work hours will be free to opt out of the class and pursue those claims on an individual basis, and the class notice should contain language informing the putative class members that this is the case.

Defendant also argues that members of the Bank Deposit class cannot be identified from company records. Resp. Br. at 10–11. The records, Defendant asserts, do not show which employee on duty during a given shift delivered the deposit to the bank or how long it took to do so. Plaintiffs counter that Defendant's records and time studies actually do reveal which employee made bank deposits and approximately how long those deposits took. Indeed, some company records appear to associate individual employees with specific bank deposits. For example, Plaintiffs' expert, David Breshears, testified that bank deposit slips were signed by

individual employees.[1] The import of these records presents a true factual dispute that can be resolved on a class-wide basis at a later stage of this litigation.

In any event, the ascertainability requirement is not about evidence; it is about whether the proposed class definitions are based on objective criteria. *Mullins*, 795 F.3d at 659. Plaintiffs' proposed classes are indisputably defined by objective criteria, and Family Video's focus in their ascertainability arguments on the strength of Plaintiffs' evidence is misplaced. The Seventh Circuit in *Mullins* explicitly rejected other courts' practice of moving "beyond examining the adequacy of the class definition itself" to assessing "the potential difficulty of identifying particular members of the class" and "the validity of claims they might eventually submit." *Id.* at 657.

Notably, the *Mullins* court also approved the practice of class members' self-identifying through affidavit, pushing aside fraud concerns and explaining that any such difficulties can be managed by the claims administration process. *Id.* at 666–67. Self-identification by affidavit may

---

[1] This following exchange during Breshears' deposition highlights potential disputes about the significance of certain types of records:

> Q. From looking at the document, Breshears' 6, can you tell who took a bank deposit on any given day?
> A. I do see signature for -- appears to be Natalie. I'm looking specifically at Bates No. 2566. And on two of those bank deposits it says "close," and on the third -- I can't quite read what it says above Natalie's signature.
> Q. Does that indicate to you somebody named Natalie took the bank deposit on those given days?
> A. Well, it tells me Natalie signed the deposit slip for -- looks like 8/20/09 at 6:00 p.m.
> Q. Does that indicate to you that Natalie actually took the bank deposit, or she just counted the deposit?
> . . .
> A: That would be an indication that Natalie was in some way performing duties related to the deposit. As far as whether Natalie was the person who physically dropped that off, I can't say that with 100 percent accuracy.

Doc. 399-20 at 191:13–192:7.

be appropriate for some class members in this case, though obviously any affidavit that conflicts with the affiant's previous sworn testimony must be questioned.

Defendant urges one additional reason for the Court to find that the proposed class definitions fail the ascertainability requirement: the Commission Class is actually, according to Defendant, a "fail-safe class." A fail-safe class is one in which liability must be determined before class members can be identified. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). The danger of certifying such a class is that, if no liability is found, the class will have no true members in it, meaning the putative class members will not be bound by the judgment. *Id.* This would leave losing plaintiffs free to pursue revised claims as individuals. *Id.* An example of a fail-safe class is one made up of employees who claim to have faced adverse employment decisions "because of their race." *See Bolden v. Walsh Constr. Co.*, 688 F.3d 893, 895 (7th Cir. 2012). If a jury were to find that no employment decisions were based on race, then the putative class members never actually were part of the class. *Id.* They could file new claims, attributing the adverse employment decisions to other impermissible criteria. *Id.*

No such problem exists in this case. If it is determined that commission payments need not have been factored into overtime rates, the commission class will not be empty. The class members will simply have lost, and they will all be bound by that judgment.

## B. Rule 23(a)(1) – Numerosity

Rule 23(a)(1) allows certification of a class claim only if the class is "so numerous that joinder of all members is impracticable." No specific minimum number of members is required, but the number forty is often cited as the point at which joinder becomes impracticable. *See, e.g.*, *Barnes v. Air Line Pilots Ass'n, Int'l*, No. 13 C 6243, 2015 WL 5822436, at *3 (N.D. Ill. Sept. 30, 2015); *Morris v. Risk Mgmt. Alternatives, Inc.*, 203 F.R.D. 336, 342 (N.D. Ill. 2001). "Mere

speculation" about the size of the class is insufficient to satisfy the numerosity requirement. *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008).

Plaintiffs argue that the numerosity requirement is satisfied in this case because their claims involve policies that governed employees at 115 Illinois stores over a period of three years, suggesting that a significant number of employees would qualify as class members. They contend that they are unable to furnish more specific information because the Court denied their 2012 motion to compel Defendant to provide information about potential Illinois class members. Doc. 142; Doc. 187. That denial, they say, was based in part on Defendant's representation that it was "not challenging numerosity." Pls.' Mem. at 6–7.

Defendant, however, does challenge numerosity in its response to Plaintiffs' motion for Rule 23 certification. It contends that Plaintiffs are merely speculating that a significant number of Illinois class members exist. Resp. Br. at 12. But counsel for Defendant stated the following during a March 7, 2012, hearing on Plaintiffs' motion to compel:

> I'll go on the record now and I say, the only possible reason I can see any relevance [of information about Illinois employees] would be numerosity. And Family Video is not challenging numerosity, your Honor.

Doc. 187. Magistrate Judge Cole, to whom the motion was referred, then issued the following order:

> The request for a sampling of class names and contact information of the potential Illinois class members and payroll data is denied without prejudice as premature. This ruling is based in part upon the position taken by counsel for the defendant.

Doc. 153. Defendant's response to the current motion does not address its lawyer's earlier representation to the Court regarding numerosity. Plaintiffs argue in their reply brief that the representation means Family Video should be estopped from challenging numerosity now. Reply Br. at 7.

Whether Plaintiffs should have renewed their motion to compel at a later date and whether Defendant meant to forever abandon any challenge to numerosity is uncertain. But Defendant's decision to ignore this issue leaves the Court with no reason to doubt that Plaintiffs have been hindered in their ability to show numerosity by the position the company then took. Under these circumstances, the Court finds that Defendant is estopped from challenging numerosity. *See Walton v. Bayer Corp.*, 643 F.3d 994, 1002–03 (7th Cir. 2011) (explaining that judicial estoppel can be applied to prevent litigants from strategically taking contrary positions at different stages of the same litigation); *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992) ("Judicial estoppel prevents a party that has taken one position in litigating a particular set of facts from later reversing its position when it is to its advantage to do so.").

**C. Rule 23(a)(2) – Commonality**

For class certification to be proper, Rule 23(a)(2) requires that class members' claims present common questions that can be resolved by common answers. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The Court concluded in the FLSA context that the "claim that Defendant undercompensated employees by failing to include commissions in their base rates of pay before calculating overtime rates is common to the proposed subclass and capable of fair and efficient collective adjudication." *Smith v. Family Video Movie Club, Inc.*, No. 11 C 1773, 2015 WL 1542649, at *5 (N.D. Ill. Mar. 31, 2015). The Court also concluded that the claim about bank deposits "is common to the proposed subclass and capable of fair and efficient collective-wide adjudication." *Id.* at *6.

Plaintiffs present three questions that they say are common to all class members. Getting answers to these questions, they contend, will resolve the liability issues in this case. Those questions are:

1)       Did Family Video require employees to make bank deposits after clocking-out without pay?

(2)     Did Family Video exclude commissions from the overtime rates it paid hourly employees?

(3)     Did Family Video's bank deposit or commission policies violate the IMWL?

Pls.' Mem. at 7–8.

Defendant first challenges commonality by pointing to evidentiary deficiencies the Court identified in rejecting Plaintiffs' earlier motion for class certification. Resp. Br. at 15. But Defendant ignores that the Court found in the FLSA decision that those deficiencies—for example, scanty proof of a company-wide bank deposit policy—have since been remedied. Discovery has revealed that the company's written policy requiring employees to take deposits to the bank off-the-clock[2] indeed had "company-wide force." *Smith*, No. 11 C 1773, 2015 WL 1542649, at *5; *see* Doc. 399, Ex. 3, Nall Dep. (121:8- 122:13). Other evidence has revealed that:

> During the period of time covered by Plaintiffs' proposed subclass, Defendant calculated overtime rates for its hourly employees using a common formula applied to all Family Video employees. See Pls.' Ex., Georg Decl., Ex. 2 Robinson Dep. 58:16–59:8; 79:14–80:1 (overtime calculations were computed using a single formula for all Family Video employees). Defendant also tracked employees' commission sales by individual employee payroll number. Id. 57:3–58:5. Ultimately, a single outside payroll department hired by Defendant handled all payroll and overtime calculations based upon computerized transmission of employee payroll data from each Family Video store. See Id., Ex. 1 Nall Dep. 140:15–21.

*Smith*, No. 11 C 1773, 2015 WL 1542649, at *4.

---

[2] The policy is found in the company's Store Training and Reference Guide ("STAR Guide"), which instructed employees to first "punch out" and then "take the final deposit directly to the bank." Doc. 175, Ex. 13, FV(Smith)001225.

Defendant does not grapple with the conclusions the Court reached in the FLSA decision. Instead, Defendant argues that the IMWL (by incorporating the FLSA) requires that any undocumented, off-the-clock hours Plaintiffs worked be included in the calculation of their overtime rates. Because determining the extent of that work would require extensive individual inquiries, Defendant argues that determining overtime rates cannot be done on a class-wide basis. Resp. Br. at 13–14.

The FLSA mandates that an employee's rate of overtime pay be calculated based on the employee's regular hourly rate. 29 C.F.R. § 778.107. To determine the regular hourly rate, the Act specifies:

> The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid.

29 C.F.R. § 778.109. Pointing to this provision, Defendant reasons, "Liability, therefore, depends on remuneration and hours actually worked. Plaintiffs have focused solely on remuneration paid and hours recorded." Resp. Br. at 13. Recognizing that Plaintiffs' do not rely on any off-the-clock hours (other than bank-deposit time) to support their claims, Defendant insists that Plaintiffs "cannot ignore their sworn testimony that they performed off-the-clock work" and "must live with the consequences of their sworn statements." *Id.* at 14. In support, the company cites cases in which parties made contradictory statements under oath, thereby damaging or defeating their claims. *See, e.g.*, *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1172 (7th Cir. 1996) (finding in a product liability case that contradictory sworn statements from the same person did not create a factual dispute that could defeat a motion for summary judgment).

Plaintiffs deny that the total number of hours worked is relevant to liability rather than damages. They also explain that they are not contradicting their sworn statements by relying exclusively on "Family Video's on-the-clock payroll records, supplemented where appropriate by Family Video's records of bank deposit time" to determine hours worked. Reply at 9. They are merely offering a conservative estimate of their damages, they contend. *Id.*

The Court agrees with Plaintiffs that they have not contradicted their deposition testimony by choosing to forgo reliance upon the undocumented work hours for which they were not paid. But whether they have contradicted themselves is irrelevant if Defendant is nevertheless correct that the number of off-the-clock hours actually worked must be known to determine liability.

That said, it is not at all clear from Defendant's memorandum why it believes the number of hours worked goes to liability rather than just to damages in this case. Perhaps Defendant means to argue that figuring out whether an employee exceeds the 40-hour threshold for membership in the Commission Class depends, obviously, on how many hours the employee worked. But Plaintiffs' proposal to rely on company records alone means, if anything, that the class could have *fewer* members than it would if undocumented hours were also counted. As explained above, Defendant cannot avoid class certification by arguing that it may owe more money to more employees than its own records indicate.

Then again, Defendant may be making a different argument altogether. The more hours that are included in an employee's regular-rate calculation under 29 C.F.R. § 778.109, the lower that rate is, and the lower the overtime rate based upon it. Defendants may believe that, if all undocumented hours were included in the calculation of putative class members' rate of pay, the overtime rate the company actually paid them would be high enough in some cases to cover the

fact that commission payments were left out of the calculation. But if this is what Defendant means to argue, it does so only obliquely and fails to raise any particular instance where this may be the case.

Defendant also argues that the commonality requirement is not met because certain defenses it intends to raise apply only to the claims of a subset of class members. But for the reasons given in Section III.F., *infra* (assessing predominance), the Court is unpersuaded that this destroys commonality.

Having rejected each of Defendant's commonality arguments, the Court concludes that Plaintiffs' claims present common questions that can be resolved by common answers. Rule 23(a)(2) is satisfied for both of the proposed subclasses.

**D. Rule 23(a)(3) – Typicality**

Plaintiffs contend that their "claims are co-extensive with other class members because they arise from identical policies and are based on the same legal theory under the IMWL," thus satisfying Rule 23(a)(3)'s typicality requirement. Pls.' Mem. at 9. Defendant responds that Plaintiffs' claims are atypical because they stopped working for the company in 2010, yet the class definitions they propose include employees who worked for Family Video until March 2011, when the company changed its payroll policies. Resp. Br. at 16.

The Court expressed a similar concern in denying Plaintiffs' first motion for class certification, citing *Bolden v. Walsh Construction Co.*, 688 F.3d 893 (7th Cir. 2012), a case in which the plaintiffs unsuccessfully sought to represent a class of employees who worked for the defendant over a period of time that extended long after the plaintiffs had left their jobs. *See Smith v. Family Video Movie Club, Inc.*, No. 11 CV 1773, 2013 WL 1628176, at *5, n. 5 (N.D. Ill. Apr. 15, 2013). Since the denial of that motion, evidence produced in discovery has

demonstrated that the official policies forming the basis of Plaintiffs' claims remained in effect until March 2011. The existence of these explicit, official policies distinguishes this case from *Bolden*, in which the claims were premised on an unofficial practice of discriminating on the basis of race. *See Bolden*, 688 F.3d. at 895. The Court concludes that Plaintiffs' claims are typical of the claims of class members who worked for Family Video even after Plaintiffs left in 2010.

**E. Rule 23(a)(4) – Adequacy**

Plaintiffs assert that they "were affected by Family Video's bank deposit and overtime compensation policies in precisely the same manner as every other member of their respective classes," making them adequate class representatives. Pls.' Mem. at 9. They also argue that their attorneys' extensive experience with class actions and long dedication to this case mean they are adequate to act as class counsel. Defendant contests the adequacy of Plaintiffs and their attorneys on multiple grounds.

**1. Plaintiff Erin Box**

Defendant contends that Plaintiff Erin Box is an inadequate class representative because she was an assistant manager during the last several months of her employment with Family Video and, in that capacity, approved employee time sheets. According to Defendant, her approval of time sheets amounts to creating the very evidence she now relies upon to prove her claims. Resp. Br. at 17–18. The Seventh Circuit warned in a sex discrimination case that choosing named plaintiffs who had authority to make employment decisions for class members could create a conflict of interest. "[W]e doubt that the plaintiffs would deliberately depress the salary of female employees whom they supervise, or increase the salary of male employees whom they supervise, in order to create evidence of discrimination," but "the possibility of such

strategic conduct (which might be unconscious) creates a conflict of interest between the plaintiffs and unnamed members of the class." *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011).

Plaintiffs argue that the problem presented in *Randall* is not present in this case; Box approved time sheets in accordance with explicit company-wide policies. The Court agrees that, because Box was not performing a discretionary function, her approval of time sheets during her time as assistant manager does not disqualify her to act as a class representative.

### 2. Plaintiff Natalie Hodorovych

Defendant contends that Hodorovych has credibility issues that render her an inadequate class representative. Resp. Br. at 18–19. During her deposition on November 1, 2011, Hodorovych said that the only off-the-clock work she engaged in was cleaning the store and taking deposits to the bank. Doc. 399-7 at 8. Then, in a declaration she signed ten days later, she described several other types of work she sometimes did off-the-clock, such as "stocking shelves," and "processing rentals and returns." Doc. 75 at 1–2. The Seventh Circuit explained in *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011), that a "named plaintiff who has serious credibility problems or who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative."

Plaintiffs attribute the discrepancies in Hodorovych's two accounts to recollection issues and difficulty understanding the questions asked. Reply Br. at 14–15. They also stress that their only remaining claim based on off-the-clock work is the bank-deposit claim, which they will prove using company records and time studies rather than Hodorovych's recollection.

Based on a review of the record, the discrepancies in Hodorovych's accounts do not seem to be the result of misunderstanding the questions asked, but they may have resulted from failure

during the deposition to recall all of the off-the-clock work she performed. In the Court's view, Hodorovych has not demonstrated credibility problems serious enough to interfere with her representation of the class. And any recollection difficulties she may have are of minimal significance now that Plaintiffs propose to prove their claims using Defendant's records and time studies.

### 3. Plaintiffs' Counsel

Class certification should be denied if plaintiff's counsel cannot adequately represent the entire class. *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002). Defendant argues that Girard Gibbs, who represents Plaintiffs, is inadequate to represent the class because he posted a notice on his Facebook.com page seeking class members for this lawsuit. Resp. Br. at 19–20.

Defendant does not explain why the Facebook posting means that Gibbs is inadequate to represent the class. Although Defendant describes Gibbs' action as "barratry," it does not, as Plaintiffs point out, accuse him of an ethical breach. The Court is not persuaded that the posting means Gibbs is inadequate to represent the interests of the entire class.

## F. Rule 23(b)(3) – Predominance

Class certification may be granted only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). Not all issues must be common to the class. "If common questions predominate, the plaintiffs may be similarly situated even though the recovery of any given plaintiff may be determined by only a subset of those common questions." *Alvarez v. City of Chi.*, 605 F.3d 445, 449 (7th Cir. 2010). Plaintiffs contend that common issues predominate because their claims are based on company-wide policies. Pls.' Mem. at 10–11. Defendant

disagrees, raising several issues that it says would need to be resolved on an individualized basis. Taking into account the cumulative effect of the issues Defendant identifies, the Court concludes for the reasons given below that common questions predominate.

### 1. Credibility determinations

Defendant first argues that individual issues predominate because discovery has revealed that different employees working at the same store gave different estimates of the time needed to take deposits to the bank. According to Defendant, these differing estimates necessitate individual credibility determinations. Resp. Br. at 21–22.

Plaintiffs respond that "[n]o credibility determination will be necessary . . . because Plaintiffs will use Family Video's own documents and not individual testimony to establish the time spent taking deposits to the bank. Family Video does not dispute the accuracy of its own time study." Reply Br. at 16. Plaintiffs also note the Court's previous observation that such "issues go more to damages than to collective liability," and common proof of damages is not required. *See Smith v. Family Video Movie Club, Inc.*, No. 11 C 1773, 2015 WL 1542649, at *6 (N.D. Ill. Mar. 31, 2015) (citing *Messner*, 669 F.3d at 819). The Court agrees with Plaintiffs that, given the evidence upon which they intend to rely, individual credibility determinations will not be needed to decide liability (and likely not to determine damages either).

### 2. Offset defenses

Some putative class members may have received paid meal breaks and other benefits that could affect their entitlement to additional pay. Based on this possibility, Defendant argues that determining whether an offset defense applies to the claims of individual class members will predominate over common issues. Resp. Br. at 23–24. The company makes a similar argument about the possibility that some employees were paid for the time they spent taking deposits to the

bank. *Id.* at 24. (The stores' time-keeping system automatically rounds to the nearest 15 minutes, meaning that if an employee punched out at 8 minutes past the hour, the employee would be paid until 15 minutes past the hour, potentially covering the time it would take to make the deposit.) The Court addressed the need for individualized calculations of this nature in its FLSA decision, reaching a conclusion that applies here with equal force:

> Defendant advances no evidence of a company-wide policy allowing 30-minute uninterrupted meal breaks. The evidence Defendant does advance of individual 30-minute paid meal breaks, again, can be efficiently managed when computing damages. Similarly, holiday pay premium offsets can be easily calculated given Defendant's payroll records. None of Defendant's defenses individualize the remaining FLSA claims to the point that proceeding as a collective action is improper.

*Smith v. Family Video Movie Club, Inc.*, No. 11 C 1773, 2015 WL 1542649, at *8 (N.D. Ill. Mar. 31, 2015).

### 3. *De minimis* **defense**

Many courts have found that FLSA claims based on an employer's failure to compensate employees for a few minutes of work per day may be subject to a *de minimis* defense. *See DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 747 F. Supp. 2d 1043, 1055 (E.D. Wis. 2010) (collecting cases). Defendant contends that deciding the applicability of a *de minimis* defense to individual claims in this case will predominate over common issues. Resp. Br. at 25–26. The analysis of this issue in the Court's FLSA opinion remains applicable:

> [The *de minimis*] defense does not apply to the commissions claim. For the bank deposit claim, the *de minimis* defense can be manageably adjudicated at trial or in a bifurcated damages proceeding. *See, e.g., Falcon v. Starbucks Corp.,* 580 F.Supp.2d 528, 540–41 (S.D.Tex.2008) (finding both methods fair and efficient management techniques for handling a *de minimis* defense). This is especially true given Defendant's detailed payroll records.

*Smith v. Family Video Movie Club, Inc.*, No. 11 C 1773, 2015 WL 1542649, at *7 (N.D. Ill. Mar. 31, 2015).

### 4. Non-compensable postliminary activity

Another issue that Defendant says will necessitate individual findings that will predominate over common issues is the question whether making bank deposits constitutes noncompensable "postliminary" activity. Resp. Br. at 26. But, as the Court concluded in the FLSA context, this issue is one that would be decided on a collective, rather than individualized, basis. *Smith v. Family Video Movie Club, Inc.*, No. 11 C 1773, 2015 WL 1542649, at *7 (N.D. Ill. Mar. 31, 2015)**;** *see, e.g., IBP, Inc. v. Alvarez,* 546 U.S. 21 (2005) (answering question in context of donning and doffing on a collective basis); *see also Sandifer v. U.S. Steel Corp.,* 678 F.3d 590 (7th Cir. 2012), *cert. granted,* 133 S.Ct. 1240 (U.S. 2013), *and aff'd,* 134 S.Ct. 870 (U.S. 2014) (examining donning and doffing of worker protective gear on a collective basis).

### 5. Individual damages issues

Defendant argues that individual damages issues will predominate over common questions, relying on the Supreme Court's holding in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013), that a method for determining damages must be applicable "across the entire class" for certification under Rule 23(b)(3) to be appropriate. Resp. Br. at 27–29. In *Comcast*, an antitrust case, the Supreme Court concluded that "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." *Id.* But the concern in *Comcast* was not that class members would need to provide individualized proof of their damages; the concern was that no calculation method had been identified that would measure only those damages attributable to the alleged antitrust violation. *Id.* In other words, the proposed calculation method in *Comcast* would not have measured *any* class member's "damages resulting from the particular antitrust injury." *Id.*

In this case, by contrast, Plaintiffs have proposed a method of calculation that would apply across the class and would measure only those damages attributable to the claimed IMWL (and FLSA) violations. As the Court explained in denying Defendant's motion to exclude Plaintiffs' expert, David Breshears, "the correct amount of wages due can be calculated for each Plaintiff using the same mathematical formula." Doc. 378 at 8–9. Individualized damages calculations will need to be made if liability is established, but a single method for making those calculations will be used.

If disputes arise over the precise numbers to be plugged into the common damages formula for a given class member or group of class members, a limited number of separate hearings could be held. The Seventh Circuit has acknowledged the propriety of doing so in some cases. *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1277, 188 L. Ed. 2d 298 (2014) ("[A] class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed."); *see also Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 379–80 (7th Cir. 2015) ("[S]cores of separate trials might be necessary to determine which class members were actually adversely affected by the policy and if they were, what loss each class member sustained. At least it will not be necessary in each of those trials to determine whether PNC had an illegal policy of denying pay for off-the-clock work.")

Separate hearings are not likely to be necessary, however, considering Plaintiffs' reasonable plan to rely on Defendant's own records and time studies to both identify class members and calculate damages. This case does not present the situation considered in *Pastor v.*

*State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1046 (7th Cir. 2007), where many thousands of evidentiary hearings might have been necessary.

Although Defendant denies that its records contain enough information to make proper calculations, its denial is largely based on its assertion that any damages calculation must include *all* an employee's work hours, including off-the-clock work that was not documented anywhere. "By offering sworn testimony of off-the-clock hours worked, Plaintiffs have created individualized evidence that precludes a finding of Rule 23(b)(3) predominance," Defendant contends once more. Resp. Br. at 28. But the Court again rejects the idea that Plaintiffs are obliged to seek compensation for every minute they may have worked without pay.

**G. Rule 23(b)(3) – Superiority**

In addition to requiring that common issues predominate, Rule 23(b)(3) also requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Plaintiffs argue that a class action is the best way to adjudicate this controversy because individual class members' claims would not be "worth the time and expense of litigating" separately. Pls.' Mem. at 12. (Plaintiffs' individual damages, for example, are estimated to be in the $50 range.) Defendant counters that the IMWL's fee shifting provision would make bringing individual claims worthwhile. Resp. Br. at 29–30. The IMWL entitles successful plaintiffs to "such reasonable attorney's fees as may be allowed by the Court." 820 Ill. Comp. Stat. Ann. 105/12. But surely Defendant does not believe that a court would award significant attorney's fees on a successful $50 claim.

The Court agrees with Plaintiffs that individual lawsuits would not be feasible. Because a class action would be manageable, the Court concludes that it would be the superior method for adjudicating this controversy.

**H. Scope of Class**

Defendant's final argument is that, if a class is certified, it should be limited to those who have opted in to the FLSA action and choose not to opt out of the IMWL action. Resp. Br. at 30. The only support it offers is that the plaintiffs in *Ervin v. OS Restaurant Services., Inc.*, 632 F.3d. 971, 978 (7th Cir. 2011), decided on remand to limit their IMWL claims to class members who had opted in to an FLSA collective action. The Court fails to see why the choice made by the *Ervin* plaintiffs should limit the scope of the class in this case. The Seventh Circuit explained in *Ervin* that potential class members may "decide whether to opt in and participate in the federal action" as well as "decide whether to opt out and not participate in the state-law claims." *Id.* at 978. Accordingly, we leave it to Plaintiffs and potential class members to determine whether to limit the class in the way Defendant requests.

### III. CONCLUSION

The Court grants Plaintiffs' Rule 23 motion for class certification. Plaintiffs may proceed with their IMWL claims on behalf of both the "Commission Class" and the "Bank Deposit Class."


**Date:** **November 19, 2015**              /s/ John Z. Lee
                                             **JOHN Z. LEE**
                                             **United States District Judge**